**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RAYMOND W. BISHER,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORP. (AMTRAK)<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br>Case No. 2:22-cv-02094 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

PAGE


I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 2

III. LEGAL ARGUMENT ..... 18

A. Summary Judgment Standard ..... 18

B. Mr. Bisher's Claims Are Preempted By The Railway Labor Act. ..... 18

C. Mr. Bisher's Age Discrimination Claim Fails As a Matter of Law. ..... 21

1. Mr. Bisher Cannot Establish a *Prima Facie* Case Because He Cannot Establish an Inference of Discrimination. ..... 22

2. Amtrak Had a Legitimate, Non-Discriminatory Reason for Terminating Mr. Bisher's Employment. ..... 25

3. Mr. Bisher Cannot Meet His Burden to Demonstrate Pretext. ..... 25

a. Mr. Bisher Has Not Produced Any Evidence to Cast Doubt on Amtrak's Legitimate, Non-Discriminatory Reason for Terminating His Employment or to Suggest That Discrimination Was More Likely Than Not the Motivating Factor in Amtrak's Decision. ..... 26

D. Mr. Bisher's Disability Discrimination Claim Fails As a Matter of Law. ..... 26

1. Mr. Bisher Cannot State a *Prima Facie* Case Because There is No Causal Connection Between His Alleged Disability and Termination. ..... 28

2. Amtrak Had a Legitimate, Non-Discriminatory Reason for Terminating Mr. Bisher's Employment. ..... 30

3. Mr. Bisher Cannot Meet His Burden to Demonstrate Pretext. ..... 30

E. Mr. Bisher's FMLA Retaliation Claim Fails As a Matter of Law. ..... 30

1. Mr. Bisher Cannot Establish a *Prima Facie* Case of FMLA Retaliation Because He Cannot Show a Causal Connection. ..... 31

2. Even If Mr. Bisher Could Establish a *Prima Facie* Case of FMLA Retaliation, He Cannot Show Pretext. ..... 33

## TABLE OF CONTENTS

PAGE

F. Mr. Bisher's FMLA Interference Claim Fails As a Matter of Law. .................. 34

1. Mr. Bisher Cannot Establish That Amtrak Denied Benefits to Which He Was Entitled Under the FMLA. ............................................ 34

a. Mr. Bisher Did Not Provide Timely Notice of His Need for FMLA Leave. ................................................................... 36

b. Mr. Bisher Has Not Identified Any Unusual Circumstances That Prevented Him From Providing Amtrak With Timely Notice of His Need for FMLA Leave. ........................................ 37

c. Amtrak Followed Its Guidelines When Backdating Mr. Bisher's FMLA Leave. ............................................................. 37

IV. CONCLUSION ........................................................................................................ 39

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acker v. Gen. Motors LLC*,
No. 4:15-CV-706-A, 2016 WL 3661466 (N.D. Tex. July 1, 2016) ....................38

*Aircraft Serv. Int'l, Inc. v. Int'l Bhd. Of Teamsters*,
779 F.3d 1069 (9th Cir. 2015) ....................19

*Allen v. PetSmart, Inc.*,
512 F. Supp. 2d 288 (E.D. Pa. 2007) ....................24

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ....................18

*Angelini v. U.S. Facilities, Inc.*,
No. CV 17-4133, 2020 WL 4015205 (E.D. Pa. July 16, 2020) ....................23

*Billet v. CIGNA Corp.*,
940 F.2d 812 (3d Cir. 1991), *overruled on other grounds* ....................26

*Boykins v. Lucent Techs., Inc.*,
78 F. Supp. 2d 402 (E.D. Pa. 2000) ....................18, 25

*Briggs v. Temple University*,
339 F.Supp.3d 466 (E.D. Pa. 2018) ....................21, 22, 25

*Brown v. Ill. Cent. R.R. Co.,*
254 F.3d 654 (7th Cir. 2001) ....................19, 20

*Burch v. WDAS AM/FM*,
No. CIV.A. 00-4852, 2002 WL 1471703 (E.D. Pa. June 28, 2002) ....................32

*Capps v. Mondelez Glob.,*
LLC, 147 F. Supp. 3d 327 (E.D. Pa. 2015) ....................35

*Capps v. Mondelez Global, LLC*,
847 F.3d 144 (3d Cir. 2017) ....................31

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ....................18

*Chapman v. UPMC Health System*,
516 F.Supp.2d 506 (W.D. Pa. 2007) ....................29

*Cheatom v. City of Philadelphia*,
No. CV 19-4803, 2020 WL 354826 (E.D. Pa. Jan. 17, 2020) ....................................................33

*Connors v. Chrysler Fin. Corp.*,
160 F.3d 971 (3d Cir. 1998)....................................................................................................22

*Consol. Rail Corp. (Conrail) v. Ry. Labor Exec. Ass'n*,
491 U.S. 299 (1989)................................................................................................................19

*Davis v. Solid Waste Services, Inc.*,
625 F. App'x 104 (3d Cir. 2015) ............................................................................................25

*Decker v. Alliant Techs., LLC*,
871 F. Supp. 2d 413 (E.D. Pa. 2012) ......................................................................................28

*Dellapenna v. Tredyffrin/Easttown Sch. Dist.*,
No. 09–6110, 2011 WL 130156 (E.D. Pa. Jan. 13, 2011) ..........................................24, 27, 31

*Dominici v. Reading Hosp./Tower Health*,
No. 5:18-CV-04181, 2020 WL 2898658 (E.D. Pa. June 3, 2020)...................................22, 23

*Dotson v. Norfolk S. Ry. Co.*,
52 Fed. Appx. 665 (6th Cir. 2002)....................................................................................20, 21

*Fitzpatrick v. Nat'l Mobile Television*,
364 F. Supp. 2d 483 (M.D. Pa. 2005) ......................................................................................23

*Frost v. PetSmart, Inc.*,
No. CIV.A. 05-6759, 2007 WL 602990 (E.D. Pa. Feb. 26, 2007) .........................................24

*Fuentes v. Perskie*,
32 F.3d 759 (3d Cir. 1994)...............................................................................................26, 39

*Gillespie v. Main Line Health*,
No. 18-60, 2019 U.S. Dist. LEXIS 2271 (E.D. Pa. Jan. 7, 2019)....................................23, 27

*Hartman v. Select Rehabilitation, LLC*,
528 F.Supp.3d 373 (E.D. Pa. 2021) ........................................................................................22

*Hawaiian Airlines, Inc. v. Norris*,
512 U.S. 246 (1994).........................................................................................................19, 20

*Int'l Bhd. of Elec. Workers Loc. 1600 v. PPL Elec. Utilities Corp.*,
No. 5:16-CV-04675, 2017 WL 6547138 (E.D. Pa. Dec. 22, 2017)........................................38

*Lauren W. ex rel. Jean W. v. DeFlaminis*,
480 F.3d 259 (3d Cir. 2007)....................................................................................................32

*Keller v. Orix Credit Alliance, Inc.*,
130 F.3d 1101 (3d Cir. 1997)....................27

*Kemp v. CSX Transp., Inc.*,
993 F. Supp. 2d 197 (N.D.N.Y. 2014)....................19

*Kennedy v. American Airlines Inc.*,
195 F. Supp. 3d 646 (D.N.J. 2016)....................20

*Killen v. N.W. Human Servs., Inc.*,
Case No. 06–4100, 2007 WL 2684541 (E.D. Pa. Sept. 7, 2007)....................33

*Lee v. Norfolk S. Ry. Co.*,
912 F. Supp. 2d 375 (W.D.N.C. 2012)....................20

*Mar v. City of McKeesport*,
Case No. 05–19, 2007 WL 2769718 (W.D. Pa. Sept. 20, 2007)....................33

*Mascioli v. Arby's Rest. Grp., Inc.*,
610 F. Supp. 2d 419 (W.D. Pa. 2009)....................34

*Massey v. United States Customs and Border Prot.*,
No. 03-6590, 2004 WL 3019234 (E.D. Pa. Dec. 28, 2004)....................18

*Mathias v. Allegheny Valley Sch.*,
560 F.Supp.2d 354 (E.D. Pa. 2008)....................25

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)....................21, 28

*Monaco v. Am. Gen. Assurance Co.*,
359 F.3d 296 (3d Cir. 2004)....................23

*Moss v. Norfolk W. Ry. Co.*,
No. 02-74237, 2003 WL 21817127 (E.D. Mich. July 22, 2003)....................21

*Mutz v. Agere, Inc.*,
No. CIV.A. 04-5082, 2005 WL 1715657 (E.D. Pa. July 21, 2005)....................37

*Njaim v. FCA US LLC*,
764 F. App'x 513 (6th Cir. 2019)....................36

*Oakley v. U.S. Airways Pilots Disability Income Plan*,
723 F.3d 227 (D.C. Cir. 2013)....................20

*Pa. Fed. of Bhd. of Maint. of Way Emp. by Dodd v. Nat'l R.R. Pass. Corp. (Amtrak)*,
989 F.2d 112 (3d Cir. 1993)....................19

*Philpot v. Amtrak*,
No. CIV.A. 10-1276, 2011 WL 5339030 (E.D. Pa. Nov. 3, 2011) ........................................33

*Priddy v. Moses H. Cone Mem'l Hosp. Operating Corp.*,
No. 1:18CV405, 2020 WL 2572285 (M.D.N.C. May 21, 2020)...........................................36

*Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*,
172 F.3d 238 (3d Cir. 1999), *superseded in part by statute on other grounds*........................18

*Rinehimer v. Cemcolift, Inc.*,
292 F.3d 375 (3d Cir. 2002)...................................................................................................29

*Ross v. Gilhuly*,
755 F.3d 185 (3d Cir. 2014)...................................................................................................31

*Ruff v. Temple Univ.*,
122 F. Supp. 3d 212 (E.D. Pa. 2015) ......................................................................................26

*Said v. Nat'l R.R. Pass. Corp.*,
390 F. Supp. 3d 46 (D.D.C. 2019) .....................................................................................19, 20

*Sampson v. Methacton Sch. Dist.*
88 F. Supp. 3d 422 (E.D. Pa. 2015) ........................................................................................28

*Scott v. Sunoco Logistics Partners, LP*,
918 F. Supp. 2d 344 (E.D. Pa. 2013) ......................................................................................26

*Showers v. Endoscopy Center of Central Penn., LLC*,
58 F.Supp.3d 446 (M.D. Pa. 2014) .........................................................................................25

*Smith v. ABF Freight Sys., Inc.*,
Case No. 04-2231, 2007 WL 3231969 (M.D. Pa. Oct. 29, 2007) ..........................................33

*Smith v. City of Allentown*,
589 F.3d 684 (3d Cir. 2009)...................................................................................................22

*Soutner v. Penn State Health*,
No. 1:18-CV-271, 2020 WL 1545768 (M.D. Pa. Feb. 13, 2020) ...........................................37

*Turner v. Hershey Chocolate USA*,
440 F.3d 604 (3d Cir. 2006)...................................................................................................28

*Wilson v. Iron Tiger Logistics, Inc.*,
628 F. App'x 832 (3d Cir. 2015) .............................................................................................28

*Woodard v. Scranton Quincy Hosp. Co.*,
LLC, 2018 WL 6018902 (M.D. Pa. Nov. 16, 2018)...............................................................34

*Ziegler v. Delaware Cty. Daily Times*,
128 F.Supp.2d 790 (E.D. Pa. 2001) .....24

**Statutes**

45 U.S.C. § 151 *et seq*. .....18

45 U.S.C. § 151a(5) .....19

45 U.S.C. § 153 .....20

**Other Authorities**

29 C.F.R. § 825.302(a) .....36, 37

29 C.F.R. § 825.302(d) .....37

29 C.F.R. § 825.303(c) .....37

Fed. R. Civ. P. 56(a) .....18

Fed. R. Civ. P. 56 .....18

## I. INTRODUCTION

Defendant, National Railroad Passenger Corporation a/k/a Amtrak ("Amtrak"), terminated Plaintiff Raymond Bisher's ("Plaintiff" or "Mr. Bisher") employment in November 2020 after giving him numerous chances to correct his behavior. Amtrak terminated Mr. Bisher's employment because he violated Amtrak's National Attendance Policy by accruing three "occurrences" (two late arrivals and one absence) within a 30 day period – a period during which Mr. Bisher did not have approved leave under the Family and Medical Leave Act ("FMLA"). Mr. Bisher was already on a final warning and had received a verbal warning and written warning for attendance violations in August and September 2020. Mr. Bisher acknowledges that he was absent and late on the dates in question, admits that he did not have approved FMLA leave in September 2020 (nor had he applied for it), and admits that he did not advise Amtrak that his late arrivals or absence at issue were covered by FMLA leave or related to any medical condition. Nevertheless, Mr. Bisher claims that the real reason for his termination was age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and Pennsylvania Human Relations Act ("PHRA"), disability discrimination in violation of the Americans with Disabilities Act ("ADA") and PHRA, and retaliation for requesting and taking FMLA leave. He also claims that Amtrak interfered with his rights under the FMLA.

Mr. Bisher's multiple discrimination claims fail because the undisputed facts show that Amtrak did not terminate his employment because of his age or disability. Mr. Bisher has presented no evidence that the individuals involved in the decision to terminate his employment were motivated by his age or that younger employees were treated more favorably. Notably, every individual involved in the decision to discipline him or terminate his employment is either similar in age to Mr. Bisher or older. Moreover, Amtrak did not replace Mr. Bisher with a sufficiently younger employee. Nor has Mr. Bisher presented any evidence that the individuals involved in

the decision to terminate his employment were motivated by, *or even aware of*, his disability.

Mr. Bisher's FMLA retaliation claim likewise fails because Amtrak initiated termination proceedings *before* Mr. Bisher requested FMLA leave, and the temporal proximity between Mr. Bisher's prior FMLA approved leaves of absences and his termination are not unusually suggestive. Even if Mr. Bisher could establish a *prima facie* case of discrimination or FMLA retaliation, Amtrak had a legitimate, non-discriminatory and non-retaliatory reason for its decision to terminate Mr. Bisher's employment, for which Mr. Bisher has no evidence of pretext.

Mr. Bisher's FMLA interference claim also fails because, as he admits, Amtrak never denied Mr. Bisher's requests for FMLA leave throughout his employment. While Mr. Bisher may believe Amtrak should have retroactivity backdated his FMLA leave by 41 days to cover the absences that led to his termination, Amtrak was not required to do so because Mr. Bisher (admittedly) did not provide timely notice of his need for FMLA leave. There were no unusual circumstances that prevented Mr. Bisher from notifying Amtrak of his need for FMLA leave in a timely manner. Finally, Mr. Bisher's claims are preempted by the Railway Labor Act because they require interpretation of a collective bargaining agreement ("CBA") because his discipline and termination are governed by the applicable CBA.

There is no dispute in this case that Mr. Bisher (1) violated Amtrak's National Attendance Policy; (2) did not have FMLA leave in place at the time of his September 2020 absences; (3) had not applied for FMLA leave at the time of his September 2020 absences; and (4) had a history of attendance-related discipline prior to the charges being filed that led to his termination. Accordingly, Mr. Bisher's claims fail and Amtrak is entitled to summary judgment.

## II. STATEMENT OF FACTS

### A. Amtrak's Commitment to a Discrimination-Free Workplace.

Amtrak has an Anti-Discrimination and Harassment policy that applies to all Amtrak

employees and prohibits unfair treatment of or preference for an individual because of their race, age, disability, religion, or other protected personal characteristics. (DSUMF ¶ 1.) Likewise, Amtrak's Standards of Excellence, which guides workplace conduct, explains that discrimination, harassment, and retaliation of any kind is inconsistent with Amtrak's values and will not be tolerated. (DSUMF ¶ 2.)

**B. Amtrak's Medical Leave and Absences Policy.**

Amtrak has a Medical Leave and Absences Policy that provides for use of leave pursuant to the Family and Medical Leave Act ("FMLA") for employees employed by Amtrak for at least 12 months who have worked at least 1,250 hours in the 12 month period immediately preceding the commencement of the requested leave and who work at a location where there are at least 50 employees or 50 employees within a 75 mile radius. The policy provides for both continuous and intermittent leaves of absence for serious health conditions of employees (as well as for other purposes) as defined by the FMLA. (DSUMF ¶ 3.)

Employees can request FMLA leave by contacting Amtrak's Leave Management department. (DSUMF ¶ 4.) Amtrak's FMLA Policy provides that employees must give notice to their supervisor at least thirty (30) days in advance of the need for leave if the need for leave is foreseeable. (DSUMF ¶ 5.) If 30 days' notice is not possible, the employee must provide notice as soon as the need for leave becomes foreseeable. (DSUMF ¶ 6.) The FMLA Policy further provides that employees must comply with their department's normal call-in procedure unless they are unable to do so. Absent unusual circumstances, when an employee fails to comply with their department's normal call-in procedures for reporting absences and requesting leave, Amtrak may delay or deny the leave request. (DSUMF ¶ 7.) If proper notification of the need for leave is not given, absences may be governed by Amtrak's attendance policies. (DSUMF ¶ 8.)

Amtrak's FMLA Policy prohibits interfering with, restraining, or denying the exercise of any rights provided by the FMLA or otherwise harassing, discriminating, or retaliating against an employee on the basis of FMLA leave, requests for FMLA leave, or filing a complaint in connection with FMLA leave. (DSUMF ¶ 9.)

When determining the start date for an employee's FMLA leave, Amtrak's Leave Management analysts ask a list of questions designed to assist them in identifying the appropriate start date ("Potential FMLA Start Dates"), including: (1) the approximate date the condition commenced, if it began within the past 15 days; (2) the date the employee was admitted to the hospital for an overnight stay, if that date falls within the past 15 days; (3) is the medical condition a pregnancy; (4) will the employee be on leave for a continuous period of time; and (5) will the employee need part time or a reduced work schedule, and if so, this date can be used if within the last 15 days. (DSUMF ¶ 10.) If none of these potential start dates apply, the analyst uses either the date the employee requested FMLA leave or the date the employee's healthcare provider signed the FMLA paperwork. (DSUMF ¶ 11.) For intermittent leave, Amtrak backdates leave up to 14 days. (DSUMF ¶ 12.) For continuous leave, Amtrak backdates leave up to 30 days. (DSUMF ¶ 13.)

**C. Mr. Bisher's Work History at Amtrak.**

Raymond Bisher (4/1965, age 58) was hired by Amtrak on May 17, 1990 as a Reservation Sales Agent. (DSUMF ¶ 14.) Throughout his employment with Amtrak, Mr. Bisher held several different positions. (DSUMF ¶ 15.) From approximately 2016 to about October 2020, Mr. Bisher was a Red Cap. (DSUMF ¶ 16.) Red Caps are responsible for assisting passengers on and off Amtrak's trains – including handicapped passengers who need wheelchair assistance – and assisting passengers with their luggage. (DSUMF ¶ 17.)

Starting in 2015, Lead Station Manager Therese Drew (DOB 5/1964, age 59) supervised Mr. Bisher. (DSUMF ¶ 18.) As of March 2018, Ms. Drew reported to Assistant Superintendent Richard Funk (DOB 7/1966, age 57). (DSUMF ¶ 19.) Mr. Funk reported to Superintendent Michael Jerew (DOB 6/1965, age 58). (DSUMF ¶ 20.)

In or around October 2020, Mr. Bisher accepted a position as a Foreman Station Cleaner, as Amtrak cut back on the number of Red Cap positions. (DSUMF ¶ 21.) On November 19, 2020, Amtrak terminated Mr. Bisher's employment for violating the National Attendance Policy. (DSUMF ¶ 22.)

### D. The Applicable Collective Bargaining Agreement Governs Discipline of Union Employees.

During his employment with Amtrak, Mr. Bisher was a member of the Transportation Communication International Union ("TCU"). (DSUMF ¶ 23.) The collective bargaining agreement ("CBA") between Amtrak and the TCU governs the discipline of TCU members, including termination. (DSUMF ¶ 24.) The CBA provides that employees must receive notice and "a fair and impartial investigation" before being disciplined or dismissed. (DSUMF ¶ 25.)

Under the CBA, TCU members that engage in misconduct are formally charged by a Charging Officer and afforded a disciplinary hearing before they can be disciplined or terminated. (DSUMF ¶ 26.) During the hearing, both the Charging Officer and the employee (represented by a union representative) are permitted to present witnesses and/or documents to a neutral Hearing Officer. (DSUMF ¶ 27.) The Hearing Officer decides whether the charge has been proven, and prepares a written decision. (DSUMF ¶ 28.) If the charge is proven, the decision is sent to the appropriate member of Amtrak management to make a decision on what discipline to apply. (DSUMF ¶ 29.) If the employee is dissatisfied with the decision, they have the right to appeal, first via a conference with Labor Relations, and then to arbitration, as set forth in the CBA.

(DSUMF ¶ 30.)

Discipline for Amtrak employees is typically progressive in nature. (DSUMF ¶ 31.) The steps of progressive discipline typically include: documented "First" and "Second" levels of handling, final warning, and termination. Progressive discipline may also be avoided for minor instances of human error that are resolved with verbal or written "coaching" letters. Amtrak, however, is not bound to follow these steps in any particular order, and will sometimes substitute a lesser punishment (*i.e.*, a suspension) for termination, or if an employee commits a particularly egregious offence, might proceed directly to termination. (DSUMF ¶ 32.) When an employee is faced with disciplinary charges, they may waive their right to the disciplinary hearing in exchange for the employee agreeing to accept a lesser form of discipline than that sought by the Charging Officer. (DSUMF ¶ 33.)

**E. Mr. Bisher's Leave of Absence History at Amtrak.**

According to Mr. Bisher, he has suffered from anxiety intermittently since 2012. (DSUMF ¶ 34.) Between 2015 and his termination, Mr. Bisher applied for and was granted intermittent leaves of absence for his anxiety on multiple occasions. (DSUMF ¶ 35.) Each time Mr. Bisher requested FMLA leave during his employment with Amtrak, he followed the same process. (DSUMF ¶ 36.) Specifically, Mr. Bisher contacted Leave Management to request FMLA paperwork, brought the paperwork to his doctor to fill out, and returned the paperwork to Amtrak. (DSUMF ¶ 37.)

Each time Mr. Bisher requested FMLA leave, he was provided with a packet of materials that included a copy of the U.S. Department of Labor's Notice that includes the statement "[g]enerally, employees must give 30-days' advance notice of the need for FMLA leave." (DSUMF ¶ 38.) During his employment, Mr. Bisher was aware that he was required to give at

least 30 days' notice in advance if the need for leave was foreseeable, and he was required to give notice as soon as practicable if the need for leave was unforeseeable. (DSUMF ¶ 39.)

On or about March 31, 2015, Mr. Bisher applied for intermittent FMLA leave by requesting paperwork from Leave Management. (DSUMF ¶ 40.) Amtrak received the completed paperwork from Mr. Bisher's physician, Dr. John Kane (which was dated April 1, 2015), on or about April 8, 2015. (DSUMF ¶ 41.) The completed paperwork indicated that Mr. Bisher's condition commenced on March 9, 2015. (DSUMF ¶ 42.) On April 24, 2015, Amtrak approved Mr. Bisher's leave for the period of April 1, 2015 to March 31, 2016. (DSUMF ¶ 43.) The leave was intermittent and was approved for up to 4 days per month for a duration of 8-12 hours an episode. (DSUMF ¶ 44.) Pursuant to its guidelines, Amtrak designated April 1, 2015 as Mr. Bisher's leave start date. (DSUMF ¶ 45.) Amtrak did not backdate the leave to the date that Mr. Bisher's doctor opined his medical condition began, which was March 9, 2015. (DSUMF ¶ 46.)

On or about May 31, 2017, Mr. Bisher applied for intermittent FMLA leave by requesting paperwork from Leave Management. (DSUMF ¶ 47.) Amtrak received the completed paperwork from Mr. Bisher's doctor on or about June 20, 2017. (DSUMF ¶ 48.) On June 30, 2017, Amtrak approved Mr. Bisher's leave for the period of May 31, 2017 to June 26, 2017. (DSUMF ¶ 49.)

On or about October 20, 2017, Amtrak sent Mr. Bisher an FMLA Eligibility Notice based on his absence on September 1, 2017. (DSUMF ¶ 50.) Amtrak received completed paperwork from Mr. Bisher's doctor on or about November 8, 2017. (DSUMF ¶ 51.) On November 15, 2017, Amtrak approved Mr. Bisher's leave for the period of October 6, 2017 through October 6, 2018. (DSUMF ¶ 52.) The leave was intermittent and was approved for up to 4 days per month for 1-2 days per episode. (DSUMF ¶ 53.) Amtrak backdated Mr. Bisher's leave to October 6, 2017. (DSUMF ¶ 54.)

On or about April 12, 2019, Amtrak sent Mr. Bisher an FMLA Eligibility Notice based on his absence on March 26, 2019. (DSUMF ¶ 55.) Amtrak received completed paperwork from Mr. Bisher's doctor on or about May 8, 2019. (DSUMF ¶ 56.) On May 10, 2019, Amtrak approved Mr. Bisher's leave for the period of May 8, 2019 through May 7, 2020. (DSUMF ¶ 57.) The leave was intermittent and was approved for up to 1 day per week for 8 hours per episode. (DSUMF ¶ 58.) Amtrak did not backdate Mr. Bisher's leave; rather, Amtrak approved Mr. Bisher's leave beginning on the date it received the completed paperwork from Mr. Bisher's doctor. (DSUMF ¶ 59.)

Ms. Drew (as Mr. Bisher's supervisor) and Mr. Funk (as Mr. Bisher's second-level supervisor) were carbon-copied on letters indicating Mr. Bisher applied for FMLA leave or was approved for FMLA leave while he was in their reporting structure. (DSUMF ¶ 60.) Mr. Bisher's FMLA leave application letters and approval letters did not mention his anxiety, but rather noted that the FMLA leave was for a "serious health condition." (DSUMF ¶ 61.)

Mr. Bisher did not apply for a medical leave of absence under the FMLA between May 7, 2020 and October 2020. (DSUMF ¶ 62.)

**F. Amtrak's National Attendance Policy and Call Off Process.**

Amtrak has a National Attendance Policy that defines the minimum standards of attendance for all employees covered by a CBA. (DSUMF ¶ 63.) An employee violates Amtrak's National Attendance Policy if he or she accrues three occurrences in a 30-day period, five occurrences in a 90-day period, or 11 occurrences in any 12-month period. (DSUMF ¶ 64.) An occurrence can be a late arrival, an early departure, or a complete absence. (DSUMF ¶ 65.) Employees do not accrue an occurrence if an absence or tardiness is covered by approved FMLA leave. (DSUMF ¶ 66.) For late arrivals, all employees are given a five minute grace period.

(DSUMF ¶ 67.) However, if an employee is more than five minutes late, they accrue an occurrence and the five minutes is included when determining how late the employee arrived at work. (DSUMF ¶ 68.)

If an employee is not able to come to work, they are required to call in and "mark off" two hours prior to the start of their shift, leaving their name, employee number, and the shift they were supposed to be working. (DSUMF ¶ 69.) Red Caps like Mr. Bisher would leave a message on a machine with this information. (DSUMF ¶ 70.) If an employee is calling off work due to an approved leave of absence (disability or FMLA), the employee should cite that the absence is related to their disability or FMLA leave so that they do not accrue an occurrence. (DSUMF ¶ 71.) When Mr. Bisher would call off work, he did not cite the reason why he was calling off and instead would just leave his name, employee number, and shift time. (DSUMF ¶ 72.) Mr. Bisher knew he was supposed to notify his supervisor of any FMLA-related absences. (DSUMF ¶ 73.)

During the COVID-19 pandemic, Amtrak did not modify or relax its National Attendance Policy, but it did make allowances for employees who had symptoms of COVID-19 or tested positive for COVID-19. (DSUMF ¶ 74.) If an employee's absence was COVID-19-related, an employee was required to report the absence as such to Amtrak's medical group and that absence would not be counted as an occurrence because they would be placed on paid COVID-19 leave. (DSUMF ¶ 75.) Amtrak's National Attendance Policy otherwise remained in place during the COVID-19 pandemic. (DSUMF ¶ 76.)

### G. Mr. Bisher's Disciplinary History and Numerous Attendance Policy Violations.

During his employment with Amtrak, Mr. Bisher received multiple warnings and/or received discipline, including but not limited to discipline for attendance violations. (DSUMF ¶ 77.) On November 30, 2018, Amtrak brought disciplinary charges against Mr. Bisher for violating

Amtrak's Standard of Excellence because he behaved unprofessionally towards his coworker by throwing luggage and using profanity (in front of Amtrak passengers.) (DSUMF ¶ 79.) On January 4, 2019, Mr. Bisher signed a waiver of the charges brought against him and accepted a five day suspension and final warning. (DSUMF ¶ 80.)

On April 11, 2019, Mr. Bisher was charged with violations of the National Attendance Policy because he accrued more than three occurrences within a 30-day period. (DSUMF ¶ 81.) On May 1, 2019, Mr. Bisher signed a waiver of the charges brought against him and accepted a three day suspension. (DSUMF ¶ 82.) At the time Mr. Bisher accrued the occurrences that led to charges being filed in 2019, he did not have approved FMLA leave. (DSUMF ¶ 83.) On April 12, 2019, after receiving notice of the disciplinary charges, Mr. Bisher applied for intermittent FMLA leave, and Amtrak granted his leave for the period of May 8, 2019-May 7, 2020. (DSUMF ¶ 84.)

On June 28, 2019 – less than two months after Mr. Bisher signed the waiver – Mr. Bisher sent Ms. Drew an email inquiring about his occurrences. (DSUMF ¶ 85.) On July 2, 2019, Ms. Drew responded and identified several occurrences Mr. Bisher accrued in May and June 2019 and stated: "Please remember, you've been given approval for FMLA 1 day per week for 8 hours per episode, however you are not always citing this as your reason when calling. I checked the sheets and neither of these dates indicated you were using FMLA as the reason. Ray, please remember, to ensure you don't receive any unnecessary occurrences and/or charges it is in your best interest to state just that to the person taking the call or on the call-off line when calling to advise you'll be late or marking off. Going forward please continue to cover yourself to avoid being dinged." (DSUMF ¶ 86.) However, even after Ms. Drew specifically advised him to cite his approved FMLA when calling off to avoid occurrences on multiple occasions, Mr. Bisher still did not do so

because he did not believe it was required. (DSUMF ¶ 87.)

On August 23, 2019, Mr. Bisher received a written warning for violating the National Attendance Policy because he did not call off two hours in advance for his shift on August 13, 2019. (DSUMF ¶ 88.) Stations Manager Adrienne Gibbs-Davis recommended that Amtrak terminate Mr. Bisher's employment for his continued attendance violations. (DSUMF ¶ 89.) Amtrak, however, did not terminate Mr. Bisher's employment at that time. (DSUMF ¶ 90.)

On August 11, 2020, Mr. Bisher was issued a verbal warning for violations of the National Attendance Policy. (DSUMF ¶ 92.) His intermittent FMLA leave had expired on May 7, 2020. (DSUMF ¶ 91.) Mr. Bisher had been late to work nine times between July 1, 2020 and August 8, 2020, and did not report that these late arrivals were due to a medical condition. (DSUMF ¶ 92.) When Ms. Drew delivered the verbal warning to Mr. Bisher, she reminded him that his FMLA leave had expired in May of 2020 and advised him to get re-certified. (DSUMF ¶ 93.)

At the beginning of each month, Ms. Drew informed Mr. Funk of any attendance violations. (DSUMF ¶ 94.) On September 9, 2020, Ms. Drew sent Mr. Funk an email advising that Mr. Bisher had three occurrences (two late arrivals and one absence) since being given a verbal warning on August 11, 2020. (DSUMF ¶ 95.) On September 11, 2020 – approximately one month after receiving a verbal warning for attendance violations – Mr. Bisher was issued a written warning for violating the National Attendance Policy. Mr. Bisher had accrued three occurrences since his verbal warning on August 11, 2020, including two late arrivals (on August 17 and 29, 2020) and one absence (August 24, 2020). (DSUMF ¶ 96.)

### H. Amtrak Brings Disciplinary Charges Against Mr. Bisher For Additional Attendance Policy Violations.

In September 2020, Mr. Bisher accrued three occurrences within 30 days. Specifically, he was late to work on September 12th and 14th, and was absent on September 25th. (DSUMF ¶ 97.)

Mr. Bisher did not have approved FMLA leave in September 2020, and did not cite any medical condition when calling off of work. (DSUMF ¶ 98.) As a result, on October 19, 2020, Mr. Funk (as the Charging Officer) brought disciplinary charges against Mr. Bisher for violation of Amtrak's National Attendance Policy. (DSUMF ¶ 99.)

Before deciding what level of discipline to assess, Mr. Funk reviews the relevant records, including an employee's disciplinary record. (DSUMF ¶ 100.) Mr. Funk then prepares a discipline assessment waiver and charge letter to send to Mr. Jerew for his approval, along with a copy of the employee's disciplinary record. (DSUMF ¶ 101.) Because Mr. Bisher was already on a final warning, had a record of attendance policy violations, and had not changed his behavior despite receiving multiple warnings, Mr. Jerew and Mr. Funk believed termination was appropriate. (DSUMF ¶ 102.)

Amtrak sent Mr. Bisher a Notice of Intent and Formal Investigation for Termination, notifying him that he had accrued three occurrences in September 2020 and advising that if he chose to move forward with the formal investigation and was found culpable, Amtrak would assess a finding of **TERMINATION FROM EMPLOYMENT IN ALL CAPACITIES**. (DSUMF ¶ 103.) Mr. Bisher understood that if found culpable, his employment would be terminated. (DSUMF ¶ 104.) Mr. Bisher also understood that, per the applicable CBA, he had the right to present witnesses and evidence at the disciplinary hearing. (DSUMF ¶ 105.)

As of October 19, 2020, when he was informed Amtrak was bringing disciplinary charges against him for violating the National Attendance Policy, Mr. Bisher had not applied for FMLA leave. (DSUMF ¶ 106.)

### I. Mr. Bisher Applies for Intermittent FMLA Leave After Being Notified of the Disciplinary Charges Brought Against Him.

On October 21, 2020, Mr. Bisher called Leave Management to request FMLA paperwork,

just as he had done in the past when applying for FMLA leave. (DSUMF ¶ 107.) On October 28, 2020, Amtrak received completed paperwork from Mr. Bisher's doctor. (DSUMF ¶ 108.) The completed paperwork stated that Mr. Bisher had been diagnosed with situational anxiety and required intermittent leave. (DSUMF ¶ 109.) The original start date for "probable duration" of Mr. Bisher's condition on the paperwork was originally October 22, 2020 through October 23, 2021. (DSUMF ¶ 110.) However, the October 22nd start date was crossed out and replaced with a start date of September 10, 2020. (DSUMF ¶ 111.)

On November 2, 2020, Amtrak placed Mr. Bisher's leave request under review pending receipt of additional information, including treatment dates from his doctor in the last 12 months. (DSUMF ¶ 112.) Amtrak received additional information for Mr. Bisher's doctor on or about November 9, 2020. (DSUMF ¶ 113.) On November 13, 2020, Amtrak approved Mr. Bisher's request for intermittent FMLA leave for the period of October 14, 2020 to October 14, 2021. (DSUMF ¶ 114.) When calculating the start date for Mr. Bisher's leave, the Leave Management analyst determined that none of the "Potential FMLA Start Dates" applied. (DSUMF ¶ 115.) As such, the analyst used the date Amtrak received the completed FMLA paperwork from Dr. Bisher's doctor (October 28, 2020) as a starting point for calculating when his leave of absence would begin. (DSUMF ¶ 116.) Using this date, Amtrak then backdated Mr. Bisher's leave request by 14 days from the date it received the completed paperwork from his doctor. (DSUMF ¶ 117)

None of individuals involved in the decision to terminate Mr. Bisher's employment were involved in, or even aware of, the designation of Mr. Bisher's FMLA leave start date. (DSUMF ¶ 118.) Amtrak's Leave Management Department was not aware of Mr. Bisher's disciplinary history or pending disciplinary hearing at the time they were considering his October 21, 2020 leave request. (DSUMF ¶ 119.)

### J. Amtrak Terminates Mr. Bisher's Employment for Violating the National Attendance Policy.

On November 11, 2020, a disciplinary hearing was held on the charges brought against Mr. Bisher. (DSUMF ¶ 120.) Both Amtrak and Mr. Bisher (who was represented by his union representative) presented witnesses and evidence. (DSUMF ¶ 121.) Hearing Officer Michael O'Connell presided over the hearing. (DSUMF ¶ 122.) Mr. Funk acted as the Charging Officer and introduced evidence on behalf of Amtrak. (DSUMF ¶ 123.) Station Manager Keith Manning testified that Mr. Bisher accrued three occurrences when he arrived to work late on September 12 and 14, 2020, and took an unpaid sick day on September 25, 2020. He also testified that these occurrences violated Amtrak's National Attendance Policy. (DSUMF ¶ 124.) Amtrak entered into evidence the August 11, 2020 verbal warning and September 11, 2020 written warning, as well as Mr. Bisher's October 21, 2020 request for FMLA leave. (DSUMF ¶ 125.)

At the hearing, Mr. Bisher claimed he did not apply for FMLA leave prior to October 21, 2020 because he was not able to get a doctor's appointment due to the COVID-19 pandemic. (DSUMF ¶ 126.) However, Mr. Bisher has acknowledged that he participated in telehealth appointments with Dr. Kane – the same doctor that completed his FMLA paperwork in the past – and also spoke with Dr. Kane over the phone during the pandemic. (DSUMF ¶ 127.) Mr. Bisher also acknowledged that in the past, it was his practice to first request the FMLA paperwork and then bring the paperwork to his doctor to fill out. However, Mr. Bisher knew that he was not required to schedule a doctor's appointment before requesting the FMLA paperwork and notifying Amtrak of his need for FMLA leave. When asked why he did not request FMLA leave before October 21, 2020, Mr. Bisher could not provide a reason. (DSUMF ¶ 128.)

Based on the testimony and evidence presented at Mr. Bisher's disciplinary hearing, the Hearing Officer, Mr. O'Connell, determined that the charges were proven. (DSUMF ¶ 129.) On

November 17, 2020, a letter was sent to Mr. Bisher via mail, informing him of the Hearing Officer's decision. (DSUMF ¶ 130.)

After reviewing the disciplinary hearing transcript and before making the decision to terminate Mr. Bisher's employment, Mr. Jerew contacted the Labor Relations Department to ensure that Mr. Bisher did not have approved intermittent FMLA leave in place at the time of the absences that led to the disciplinary charges. (DSUMF ¶ 131.) Senior Director of Labor Relations, Aaron Buck, contacted Leave Management to confirm whether Mr. Bisher had approved intermittent FMLA leave in place in September 2020. (DSUMF ¶ 132.) Leave Management confirmed that Mr. Bisher did not have approved FMLA leave in September 2020. (DSUMF ¶ 133.) Mr. Buck notified Mr. Jerew that the absences that led to Mr. Bisher's termination were not covered by FMLA. (DSUMF ¶ 134.) As a result, Mr. Jerew decided to move forward with termination. (DSUMF ¶ 135.) On November 19, 2020, Amtrak terminated Mr. Bisher's employment for violating Amtrak's National Attendance Policy. (DSUMF ¶ 136.) Mr. Bisher was notified of his termination by letter. (DSUMF ¶ 137.)

Mr. Jerew was not aware that Mr. Bisher suffered from anxiety or any other disability, and was not aware that Mr. Bisher had intermittent FMLA leave until he reviewed the disciplinary hearing transcript, after the charges had been proven. (DSUMF ¶ 138.) Mr. Buck was not aware that Mr. Bisher suffered from anxiety or any other disability, and was not aware that Mr. Bisher had intermittent FMLA leave until he reviewed the disciplinary hearing transcript, after the charges had been proven. (DSUMF ¶ 139.) Mr. Funk was not aware that Mr. Bisher suffered from anxiety or any other disability, or the reason why Mr. Bisher was on intermittent FMLA leave. (DSUMF ¶ 140.) Ms. Drew was not aware that Mr. Bisher suffered from anxiety or any other disability, or the reason why Mr. Bisher was on intermittent FMLA leave. (DSUMF ¶ 141.)

### K. After Amtrak Approves His Intermittent FMLA Leave, Mr. Bisher Asks Leave Management to Backdate His Leave 41 Days.

On November 17, 2020 – the same day he learned of the Hearing Officer's decision – Mr. Bisher called Amtrak's Leave Management department to ask why his FMLA leave was not backdated to September 10, 2020 – the date his doctor indicated that his condition commenced. (DSUMF ¶ 142.) The Leave Management representative discussed the Employee Rights and Responsibilities with Mr. Bisher, including the requirement that an employee give 30 days' advanced notice of the need for FMLA leave if foreseeable, or notify the employer as soon as practical if the leave is unforeseeable. (DSUMF ¶ 143.) The Leave Management representative advised Mr. Bisher that because he did not give 30 days' advanced notice of the need for FMLA leave and follow Amtrak's usual procedures, Amtrak could not backdate his leave to September 10, 2020. Mr. Bisher was also advised that Amtrak backdated his leave 14 days (October 14, 2020), pursuant to its guidelines. (DSUMF ¶ 144.)

Mr. Bisher admits that Amtrak never denied any of Mr. Bisher's requests for FMLA leave. (DSUMF ¶ 145.)

### L. Mr. Bisher Appeals His Termination Through His Union.

Pursuant to the applicable CBA, Mr. Bisher appealed his termination to Amtrak's Labor Relations Department. (DSUMF ¶ 146.) Christopher Richtarich (Senior Manager of Labor Relations) reviewed Mr. Bisher's appeal. (DSUMF ¶ 147.) In reviewing an appeal, Mr. Richtarich is limited to the appeal itself, the disciplinary hearing transcript and exhibits, and the employee's disciplinary record. (DSUMF ¶ 148.) Based on his review of the record before him, Mr. Richtarich issued a denial letter. (DSUMF ¶ 149.) Mr. Richtarich was not aware that Mr. Bisher suffered from anxiety or any other disability, and was not aware that Mr. Bisher had intermittent FMLA leave until he reviewed the disciplinary hearing transcript, after the charges

had been proven. (DSUMF ¶ 150.) Mr. Bisher did not appeal his termination to the tribunal established under the Railway Labor Act ("RLA"). (DSUMF ¶ 151.)

### M. Mr. Bisher's Position Was Filled By An Employee Only Three Years Younger Than Him.

Every week, vacant positions are posted in the Union Bulletin by the Chief Assignment Clerk. (DSUMF ¶ 152.) The Union Bulletin instructs union employees how to submit a bid for a vacant position. (DSUMF ¶ 153.) The individual with the highest seniority that bids on a vacant position is automatically placed into that position. (DSUMF ¶ 154.) Amtrak management has no control over who is placed into a vacant position. (DSUMF ¶ 155.)

On November 25, 2020, Amtrak posted Mr. Bisher's position as vacant in the Union Bulletin. (DSUMF ¶ 156.) Pursuant to the applicable CBA, interested applicants bid on the position and the individual with the highest seniority was automatically placed into the position. (DSUMF ¶ 157.) Management did not have control over who was placed into the position Mr. Bisher previously held. (DSUMF ¶ 158.) Effective December 10, 2020, Lamin Fulton (DOB 7/1968, age 55) filled the position previously held by Mr. Bisher. (DSUMF ¶ 159.)

### N. Other TCU Members Were Terminated For Attendance Policy Violations in 2020-2021.

During 2020-2021, other TCU members who worked in the Philadelphia station were also terminated for attendance policy violations, including:

- Kimberly Carter (terminated 12/16/2020, age 54 at time of termination);
- Jason Medina (terminated 3/25/2021, age 32 at time of termination);
- Terran Carter (terminated 6/28/2021, age 31 at time of termination).

(DSUMF ¶ 160.)

## III. LEGAL ARGUMENT

### A. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, a defendant is entitled to summary judgment where "there is no genuine dispute as to any material fact and the [defendant] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis added).

In employment discrimination cases, an employer is entitled to summary judgment "if the record conclusively reveal[s] some other nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Massey v. United States Customs and Border Prot.*, No. 03-6590, 2004 WL 3019234, *7 (E.D. Pa. Dec. 28, 2004) (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000)). A mere "scintilla" of evidence or evidence that is "merely colorable" or "not significantly probative" is not enough to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252. Speculation and conclusory allegations are likewise insufficient. *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999), *superseded in part by statute on other grounds*; *Boykins v. Lucent Techs., Inc.*, 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000).

### B. Mr. Bisher's Claims Are Preempted By The Railway Labor Act.

Because Mr. Bisher's claims require interpretation of the applicable collective bargaining agreement ("CBA"), his claims are preempted by the Railway Labor Act ("RLA"). Disputes between Amtrak and its employees are generally governed by the RLA. 45 U.S.C. § 151 *et seq.*

The RLA was "enacted . . . [t]o avoid any interruption to commerce or to the operation of any carrier engaged therein" by "provid[ing] for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 151a(5); *Aircraft Serv. Int'l, Inc. v. Int'l Bhd. Of Teamsters*, 779 F.3d 1069, 1073 (9th Cir. 2015); *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 248 (1994).

The RLA is intended "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines, Inc.,* 512 U.S. at 252; *see also Pa. Fed. of Bhd. of Maint. of Way Emp. by Dodd v. Nat'l R.R. Pass. Corp. (Amtrak)*, 989 F.2d 112, 114 (3d Cir. 1993); *Said v. Nat'l R.R. Pass. Corp.*, 390 F. Supp. 3d 46, 54 (D.D.C. 2019). "Referring arbitrable matters to the [National Railroad Adjustment] Board . . . assur[es] that collective-bargaining contracts are enforced by arbitrators who are experts in 'the common law of [the] particular industry.'" *Consol. Rail Corp. (Conrail) v. Ry. Labor Exec. Ass'n*, 491 U.S. 299, 310 (1989). While the RLA does not, "*as a general rule*" bar claims arising under an independent federal statute, "this rule no longer applies if the federal claim asserted . . . depends for its resolution on the interpretation of the CBA. Such claims are not 'independent' of the CBA regardless of their source, and are therefore precluded by the RLA." *Brown v. Ill. Cent. R.R. Co.* 254 F.3d 654, 664 (7th Cir. 2001); *see also Kemp v. CSX Transp., Inc.*, 993 F. Supp. 2d 197, 216 n.16 (N.D.N.Y. 2014).

"The RLA establishes a mandatory arbitral mechanism for 'the prompt and orderly settlement' of two classes of disputes—'major disputes' and 'minor disputes.'" *Said*, 390 F. Supp. 3d at 54 (quoting *Brown*, 254 F.3d at 658). Major disputes "relate to the formation of collective bargaining agreements or efforts to secure them." *Hawaiian Airlines*, 512 U.S. at 252. Minor

disputes, however, are disputes "growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 153; *see Hawaiian Airlines*, 512 U.S. at 256. Minor disputes "must be resolved [ ] through the RLA mechanisms, including the carrier's internal dispute-resolution processes and an adjustment board established by the employer and the unions." *Hawaiian Airlines*, 512 U.S. at 256. A determination that a plaintiff's claim constitutes a "minor dispute" preempts that claim. *Said*, 390 F. Supp. 3d at 54 (granting motion for reconsideration and holding that District Court should not have considered evidence that required interpretation or application of a collective bargaining agreement and, as such, summary judgment for the employer was appropriate); *Lee v. Norfolk S. Ry. Co.*, 912 F. Supp. 2d 375, 379-80 (W.D.N.C. 2012) (holding that the RLA preempted a Section 1981 claim where the plaintiff claimed he was discriminated against "due to an erroneous application of the [CBA]" and was more severely disciplined than white employees). Parties cannot bypass the National Railroad Arbitration Board by filing claims in federal court. *Dotson v. Norfolk S. Ry. Co.*, 52 Fed. Appx. 665, 658 (6th Cir. 2002).

A court is not permitted to interpret a CBA in order to resolve a claim because "judicial incursion into what the RLA defines as the exclusive province of the RLA arbitration boards . . . would 'lead to evisceration of the grievance and arbitration procedures provided by the RLA.'" *Brown*, 254 F.3d at 664. As such, federal claims that require interpretation of a CBA are precluded. *Id.* at 661-662. RLA preemption/preclusion is jurisdictional. *Oakley v. U.S. Airways Pilots Disability Income Plan*, 723 F.3d 227, 235-238 (D.C. Cir. 2013); *Kennedy v. American Airlines Inc.*, 195 F. Supp. 3d 646, 654 (D.N.J. 2016) (holding that district court lacked subject matter jurisdiction over claims alleging CBA violations).

The discipline, including the termination, of TCU members like Mr. Bisher is governed by

the applicable CBA. (DSUMF ¶ 24.) Under the CBA, TCU members that engage in misconduct must receive notice and "a fair and impartial investigation" before being disciplined or dismissed. (DSUMF ¶ 25.) If the employee is dissatisfied with the decision, they have the right to appeal. (DSUMF ¶ 30.) Thus, any "right" Mr. Bisher had to a hearing and to appeal his termination emanate exclusively from the CBA. As a result, Mr. Bisher's claims require interpretation of the CBA. *See Dotson*, 52 Fed. Appx. at 658 (holding that question of whether plaintiff should have been disciplined or was disciplined more harshly than others was preempted by the RLA because it depended on interpreting a CBA); *Moss v. Norfolk W. Ry. Co.*, No. 02-74237, 2003 WL 21817127, *5 (E.D. Mich. July 22, 2003) (holding that plaintiff's race discrimination claim that he was discharged for the same conduct when a white employee was not depended on interpretation of the CBA regulations regarding discipline and was, therefore, preempted by the RLA).

Because Mr. Bisher's claims are preempted by the RLA, Amtrak is entitled to summary judgment. Even if Mr. Bisher's claims were not preempted, however, no genuine issue of material fact exists and Amtrak is entitled to judgment as a matter of law. *See infra*.

**C. Mr. Bisher's Age Discrimination Claim Fails As a Matter of Law.**

In the absence of direct evidence (as is the case here), claims for age discrimination under Title VII are subject to the *McDonnell Douglas*[1] burden shifting analysis. *Briggs v. Temple University*, 339 F.Supp.3d 466, 487 (E.D. Pa. 2018). To establish a *prima facie* case of age discrimination, Mr. Bisher must show (1) he is forty years old or older, (2) he experienced an adverse employment action, (3) he was qualified for his position, and (4) he was ultimately

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

replaced by a sufficiently younger employee to support an inference of discriminatory animus.[2] *Smith v. City of Allentown*, 589 F.3d 684, 689-90 (3d Cir. 2009). Mr. Bisher can also establish an inference of age discrimination "by showing that younger employees were treated more favorably." *Dominici v. Reading Hosp./Tower Health*, No. 5:18-CV-04181, 2020 WL 2898658, at *13 (E.D. Pa. June 3, 2020). If Mr. Bisher establishes a *prima facie* case, the burden shifts to Amtrak to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Briggs*, 339 F.Supp.3d at 487. Amtrak need only articulate, not prove, its legitimate nondiscriminatory reason. *Id.* If Amtrak carries this burden, Mr. Bisher must show, by a preponderance of the evidence, that Amtrak's legitimate, nondiscriminatory reason was merely a pretext for discrimination. *Id.*

#### 1. Mr. Bisher Cannot Establish a *Prima Facie* Case Because He Cannot Establish an Inference of Discrimination.

Assuming, for purposes of this Motion only, that Mr. Bisher can establish the first three elements of his *prima facie* case, his age discrimination cannot survive summary judgment because he fails to present any evidence suggesting his employment was terminated under circumstances giving rise to an inference of discrimination.

*First*, Mr. Bisher cannot show that he was replaced by a "sufficiently younger" employee. To satisfy the "sufficiently younger" requirement of a plaintiff's *prima facie* case, "the age difference must be enough for a fact-finder to reasonably conclude that the employment decision was based on age." *Hartman v. Select Rehabilitation, LLC*, 528 F.Supp.3d 373, 386 (E.D. Pa. 2021). "Although there is no bright-line rule, 'it is generally accepted that when the difference in age between the fired employee and his or her replacement is fewer than five or six years, the

[2] Age discrimination claims asserted under the ADEA and PHRA are analyzed under the same framework. *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 972 (3d Cir. 1998).

replacement is not considered "sufficiently younger," and thus no *prima facie* case is made.'" *Angelini v. U.S. Facilities, Inc*., No. CV 17-4133, 2020 WL 4015205, at *9 (E.D. Pa. July 16, 2020) (finding that plaintiff could not establish a *prima facie* case of age discrimination by pointing to the age of his replacement who was three years younger than plaintiff); *Monaco v. Am. Gen. Assurance Co*., 359 F.3d 296, 307 (3d Cir. 2004) (finding employees who were only two and three years younger than plaintiff to be "a differential which does not satisfy the sufficiently younger standard [the Supreme Court] set forth"); *Fitzpatrick v. Nat'l Mobile Television*, 364 F. Supp. 2d 483, 491-92 (M.D. Pa. 2005) (dismissing plaintiff's age discrimination claim where plaintiff was replaced by employee who was four years younger). Here, Lamin Fulton – the employee that filled the position previously held by Mr. Bisher – is only three years younger than Mr. Bisher. (DSUMF ¶ 159.) Moreover, the individuals involved in the decision to terminate Mr. Bisher's employment did not decide who would replace Mr. Bisher. Rather, pursuant to the applicable CBA, Amtrak posted Mr. Bisher's position in the Union Bulletin, interested applicants bid on the position, and the individual with the highest seniority was automatically placed into the position. (DSUMF ¶¶ 152-59.)

*Second*, Mr. Bisher cannot show that younger employees were treated more favorably. *Dominici*, 2020 WL 2898658, at *13. Mr. Bisher claims that Amtrak discriminated against him on the basis of his age because older employees are more expensive to employ and have more time off, and therefore Amtrak wants to "get out with the old and in with the new." (Bisher Dep. 191:21-192:9, 222:2-17). Mr. Bisher's subjective beliefs, however, are insufficient to establish an inference of discrimination. *See Gillespie v. Main Line Health*, No. 18-60, 2019 U.S. Dist. LEXIS 2271, at **20-21 (E.D. Pa. Jan. 7, 2019) (citing *Willis v. UPCMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 645-46 (3d Cir. 2015)) (noting "[a] Plaintiff's own belief, however, without

supporting evidence is insufficient to establish an inference of discrimination."); *Dellapenna v. Tredyffrin/Easttown Sch. Dist.*, No. 09–6110, 2011 WL 130156, *8 (E.D. Pa. Jan. 13, 2011) ("A plaintiff's personal belief that the real reason for the job action was discriminatory animus does not create a genuine issue of material fact.") (internal citations omitted). Moreover, the evidence shows that younger TCU employees were also terminated for attendance violations in 2020 and 2021. (DSUMF ¶ 160.)

Mr. Bisher fails to present any other evidence to support an inference of age discrimination. He was not subjected to any age-related comments. While he claims that Mr. Funk (then Assistant Superintendent and Mr. Bisher's second-level supervisor) told others he was going to "get" Mr. Bisher (Bisher Dep. 219:3-17), that alleged comment is age-neutral and innocuous, and is not evidence of any discriminatory bias against Mr. Bisher. Most notably, the individuals involved in the decision to discipline Mr. Bisher for attendance violations and ultimately terminate his employment were all either similar in age to Mr. Bisher (age 58) or older. Specifically, Mr. Jerew is 58 years old; Mr. Funk is 57 years old; and Ms. Drew is 59 years old. (DSUMF ¶¶ 18-20.) This weakens any inference of age discrimination. *See, e.g., Allen v. PetSmart, Inc.*, 512 F. Supp. 2d 288, 295 (E.D. Pa. 2007) ("The decision makers' membership in the same protected class as the plaintiff weakens any inference of discrimination."); *Frost v. PetSmart, Inc.*, No. CIV.A. 05-6759, 2007 WL 602990, at *8 (E.D. Pa. Feb. 26, 2007) (same); *Ziegler v. Delaware Cty. Daily Times*, 128 F.Supp.2d 790, 812 n. 47 (E.D.Pa.2001) (noting that because the decision maker was 53 years old when he terminated the 60–year–old plaintiff's employment, "the inference of discrimination is therefore less since the decisionmaker was a member of the same protected class as the plaintiff").

As such, Mr. Bisher cannot make out a *prima facie* case of age discrimination and Amtrak

is entitled to summary judgment on this claim.

### 2. Amtrak Had a Legitimate, Non-Discriminatory Reason for Terminating Mr. Bisher's Employment.

Even if Mr. Bisher could state a *prima facie* case of discrimination (which he cannot), the burden would shift to Amtrak to articulate a legitimate, non-discriminatory reason for its decision to terminate his employment. *Briggs*, 339 F.Supp.3d at 487. The employer's burden at this stage is "relatively light" and is satisfied if it articulates any legitimate reason for the challenged employment decision. *Boykins v. Lucent Technologies, Inc*, 78 F. Supp. 2d 402, 409 (E.D. Pa. 2000).

Here, Amtrak has clearly met its burden. Amtrak terminated Mr. Bisher's employment because he violated Amtrak's National Attendance Policy by accruing three occurrences within 30 days: he was late to work on September 12 and 14, 2020 and absent on September 25, 2020. (DSUMF ¶ 97.) Courts have held that attendance policy violations are a legitimate reason for separating an employee. *See Davis v. Solid Waste Services, Inc.*, 625 F. App'x 104, 106 (3d Cir. 2015) (employer "easily satisfied" its burden to offer legitimate reason for terminating employee who violated attendance policy); *Showers v. Endoscopy Center of Central Penn., LLC*, 58 F.Supp.3d 446, 465 (M.D. Pa. 2014) (failure to comply with an employer's attendance policy is a proper basis for termination); *Mathias v. Allegheny Valley Sch.*, 560 F.Supp.2d 354, 360 (E.D. Pa. 2008) (failure to comply with attendance policy to be a legitimate, non-discriminatory reason for adverse employment action). Amtrak gave Mr. Bisher several chances to correct his behavior, but he failed to do so. Because he was already on a final warning and had received a verbal and written warning for attendance violations in August and September 2020, termination was the next step in Amtrak's progressive discipline process. (DSUMF ¶ 102.) Notably, Mr. Bisher does not contest that he was late to work on September 12 and 14, 2020, or that he was absent from work on

September 25, 2020. (DSUMF ¶ 97.)

### 3. Mr. Bisher Cannot Meet His Burden to Demonstrate Pretext.

Because Amtrak has articulated a legitimate, non-discriminatory reason for its decision, Mr. Bisher must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Amtrak's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). To satisfy his burden, Mr. Bisher "cannot simply show that [Amtrak's] decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Id.* As such, the question for the Court is "not whether [Amtrak] made the best, or even a sound, business decision; it is whether the real reason is [discrimination]." *Scott v. Sunoco Logistics Partners, LP*, 918 F. Supp. 2d 344, 354 (E.D. Pa. 2013) (citation omitted). Mr. Bisher "has the burden of casting doubt on an employer's articulated reasons for an employment decision. Without some evidence to cast this doubt, [a] court will not interfere in an otherwise valid management decision. To require less would be to expose to litigation every management decision impacting on a protected party." *Billet v. CIGNA Corp.*, 940 F.2d 812, 828 (3d Cir. 1991), *overruled on other grounds*; *see also Ruff v. Temple Univ.*, 122 F. Supp. 3d 212, 218 (E.D. Pa. 2015) ("Unless there is evidence of discrimination, the court is neither permitted to get involved in the subjective business decision of the employer, nor set its own employment standards for the employer.").

#### a. Mr. Bisher Has Not Produced Any Evidence to Cast Doubt on Amtrak's Legitimate, Non-Discriminatory Reason for Terminating His Employment or to Suggest That Discrimination Was More Likely Than Not the Motivating Factor in Amtrak's Decision.

For the reasons discussed in Section III(C)(1), Mr. Bisher cannot establish pretext. Amtrak terminated Mr. Bisher's employment because he violated the National Attendance Policy, despite

being given several chances to correct his behavior. Mr. Bisher may disagree with Amtrak's decision to terminate his employment, or believe it was unwise or unfair. He cannot, however, show that Amtrak's reason for terminating his employment was "so plainly wrong that it cannot have been the employer's real reason." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997). Mr. Bisher has presented no evidence to show that his termination was merely pretext for Amtrak to discriminate against him because of his age. Rather, the evidence shows that Mr. Bisher admittedly violated Amtrak's National Attendance Policy, was already on a final warning, and had received a verbal warning and written warning for attendance violations in August and September 2020. (DSUMF ¶¶ 80, 92, 96, 97, 102.) Mr. Bisher's subjective belief that Amtrak terminated his employment because of his age, without more, cannot be used to prove pretext and defeat summary judgment. *Gillespie*, 2019 U.S. Dist. LEXIS 2271, at **20-21; *Dellapenna*, 2011 WL 130156, *8.

Mr. Bisher may attempt to argue that Amtrak's legitimate, non-discriminatory reason is unworthy of credence because Amtrak "relaxed" its National Attendance Policy during the COVID-19 pandemic, and therefore he should not have received occurrences in 2020. This argument is without merit. During COVID-19, Amtrak did not relax or modify its National Attendance Policy, but rather COVID-19-related absences were not counted against employees. (DSUMF ¶ 74.) If an employee contracted COVID-19 or had symptoms of COVID-19, Amtrak directed employees to report their absence to Amtrak's medical group. (DSUMF ¶¶ 74-75.) If an employee followed this procedure, they would not receive an occurrence for that COVID-19-related absence and instead would be placed on paid COVID-19 leave. (DSUMF ¶ 75.) Otherwise, Amtrak's National Attendance Policy remained in place. (DSUMF ¶ 76.) Notably, Mr. Bisher has never cited COVID-19 as a reason for his absences.

Even viewing the facts in the light most favorably to Mr. Bisher, there is simply no evidence upon which a factfinder could either disbelieve Amtrak's legitimate, non-discriminatory reason for Mr. Bisher's termination or conclude that age discrimination was a motivating factor. Accordingly, Mr. Bisher's age discrimination claim fails as a matter of law and Amtrak is entitled to summary judgment.

### D. Mr. Bisher's Disability Discrimination Claim Fails As a Matter of Law.

Where, as here, there is no direct evidence of discrimination, courts analyze disability discrimination claims under the burden-shifting framework established by *McDonnell Douglas*. *See Sampson v. Methacton Sch. Dist.* 88 F. Supp. 3d 422, 434 (E.D. Pa. 2015).

#### 1. Mr. Bisher Cannot State a *Prima Facie* Case Because There is No Causal Connection Between His Alleged Disability and Termination.

To establish a *prima facie* case for disability discrimination under the ADA and PHRA,[3] Mr. Bisher must prove (1) he has a disability;[4] (2) he is a "qualified individual" (*i.e.*, he can perform the essential functions of the job, with or without a reasonable accommodation); and (3) he has suffered an adverse employment action *because of* his disability. *See Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006) (citing *Buskirk v. Apollo Metals*, 307 F.3d 160, 166 (3d Cir. 2002) (emphasis added). To survive dismissal under the third prong, Mr. Bisher must demonstrate that his disability was a "determinative factor" in any adverse employment action taken against him. *Decker v. Alliant Techs., LLC*, 871 F. Supp. 2d 413, 428 (E.D. Pa. 2012) (citing *Watson v. Se. Penn. Transp. Auth.*, 207 F.3d 207, 214-15 (3d Cir. 2000)).

Here, there is no evidence that Mr. Funk – who initiated the disciplinary charges against

---

[3] Disability discrimination claims under the ADA and PHRA are analyzed under the same framework. *See Wilson v. Iron Tiger Logistics, Inc.*, 628 F. App'x 832, 835-36 (3d Cir. 2015).

[4] For the purposes of this Motion only, Amtrak will assume that Mr. Bisher's anxiety prevents him from engaging in a major life activity.

Mr. Bisher that led to his termination – was aware Mr. Bisher was disabled. (DSUMF ¶ 99.) Indeed, Mr. Funk testified that he *did not know* Mr. Bisher suffered from anxiety or any other disability, only that he had intermittent FMLA leave. (DSUMF ¶ 140.) Mr. Bisher believes Mr. Funk was aware of his disability because Mr. Funk was carbon-copied on his FMLA approval letters. (Bisher Dep. 225:10-18). Mr. Bisher agrees, however, that the FMLA approval letters did not mention his anxiety. (Bisher's Dep. 225:13-230:5.) He also admits he never talked to Mr. Funk about his anxiety, only that he had approved FMLA leave. (Bisher Dep. 230:16-231:4).

Nor is there any evidence that Mr. Jerew – who made the decision to terminate Mr. Bisher – was aware that Mr. Bisher suffered from anxiety. (DSUMF ¶135.) In fact, Mr. Jerew testified that he *did not know* that Mr. Bisher had a disability, and did not become aware that Mr. Bisher had intermittent FMLA leave until he read the disciplinary hearing transcript, *after* the termination charges were brought against Mr. Bisher. (DSUMF ¶ 138.) Ms. Drew – who was involved in disciplining Mr. Bisher for attendance violations – also testified that she *did not know* Mr. Bisher suffered from anxiety or any other disability, only that he had intermittent FMLA leave.[5] (DSUMF ¶ 141.) *See Chapman v. UPMC Health System*, 516 F.Supp.2d 506, 532-33 (W.D. Pa. 2007) ("The mere fact that that an employee, . . . requires intermittent FMLA leave for a serious health condition does not mean that the employer is automatically on notice that the employee is 'disabled' as that term is defined under the ADA . . . .").

It is axiomatic that an employer cannot discriminate against an employee on the basis of disability without knowing that the employee has a disability. *See Rinehimer v. Cemcolift, Inc.*,

[5] Mr. Buck (Senior Director, Labor Relations) and Mr. Richtarich (Senior Manager, Labor Relations) testified that they *did not know* Mr. Bisher had a disability and did not know he had intermittent FMLA leave until reviewing the disciplinary hearing transcript, *after* the termination charges had been proven. (DSUMF ¶¶ 139, 150.)

292 F.3d 375, 380 (3d Cir. 2002) ("[T]o establish discrimination because of a disability, an employer must know of the disability."). Without evidence that the individuals involved in the decision to discipline Mr. Bisher and terminate his employment knew Mr. Bisher had a disability, Mr. Bisher cannot show that his employment was terminated because of his disability. For this reason, Amtrak is entitled to summary judgment on Mr. Bisher's disability discrimination claim.

**2. Amtrak Had a Legitimate, Non-Discriminatory Reason for Terminating Mr. Bisher's Employment.**

As set forth above in Section III(B)(2), *supra*, Amtrak had a legitimate, non-discriminatory reason for Mr. Bisher's termination – his continuous violations of the National Attendance Policy.

**3. Mr. Bisher Cannot Meet His Burden to Demonstrate Pretext.**

Just as Mr. Bisher cannot show that Amtrak's reason for terminating his employment was pretext for age discrimination, he cannot establish that Amtrak's reason was pretext for disability discrimination. As discussed *supra*, the evidence demonstrates that the decision makers were not aware that Mr. Bisher suffered from anxiety or any other disability. Mr. Bisher admitted that when calling off of work, he did not inform Amtrak that he was calling off due to his disability. (DSUMF ¶ 87.) Significantly, Mr. Bisher did not cite his disability as the reason for his late arrivals on September 12 and 14, 2020 or his absence on September 25, 2020 – the occurrences that ultimately led to his termination. (DSUMF ¶¶ 97-98.) If Mr. Bisher did not cite his disability when calling off of work, Amtrak could have no way of knowing that his late arrivals or absences were in any way related to his disability.

Further, Mr. Bisher first applied for FMLA leave for his anxiety in 2015. (DSUMF ¶ 40.) The fact that Amtrak continued to employ Mr. Bisher for more than five years after he notified Amtrak of his anxiety diagnosis belies a conclusion that Amtrak's real reason for terminating Mr. Bisher's employment was disability discrimination. If Mr. Bisher believed he was receiving

occurrences and being disciplined for absences that related to his disability, he could have filed a complaint with Human Resources or management or a grievance with his union, but he did not. (DSUMF ¶ 78.)

Mr. Bisher cannot overcome Amtrak's legitimate, non-discriminatory reason by merely speculating that his employment was terminated because of his disability. *See Wiest*, 812 F. 3d at 328; *Dellapenna*, 2011 WL 130156, at *8. Because there is no genuine issue of material fact that would allow a factfinder to determine that Mr. Bisher's employment was terminated because of his disability, Amtrak is entitled to judgment as a matter of law on his disability discrimination claim.[6]

### E. Mr. Bisher's FMLA Retaliation Claim Fails As a Matter of Law.

Mr. Bisher's FMLA retaliation claim fails because there is no evidence that Amtrak's decision to terminate his employment was in any way related to his FMLA leave or any other FMLA-protected activity. To establish a *prima facie* case of FMLA retaliation, Mr. Bisher must show that (1) he invoked his right to FMLA-qualifying leave; (2) he suffered an adverse employment decision; and (3) the adverse decision was causally related to his leave. *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014). As in employment discrimination cases, if a plaintiff establishes a *prima facie* case of FMLA-related retaliation, the employer "'must articulate a legitimate, nondiscriminatory reason for the adverse employment action. The burden then shifts back to the plaintiff to prove, by a preponderance of the evidence, that the articulated reason was a mere pretext for discrimination.'" *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 152 (3d Cir. 2017).

---

[6] To the extent Mr. Bisher argues that Amtrak's legitimate, non-discriminatory reason is unworthy of credence because Amtrak "relaxed" its National Attendance Policy during COVID-19, his argument fails for the reasons discussed in Section III(C)(3)(a), *supra*.

**1. Mr. Bisher Cannot Establish a *Prima Facie* Case of FMLA Retaliation Because He Cannot Show a Causal Connection.**

To demonstrate a causal connection, Mr. Bisher "must prove either (1) an unusually suggestive temporal proximity between his protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Absent that proof, Mr. Bisher must show that from the "'evidence gleaned from the record as a whole' the trier of the fact should infer causation." *Id.* (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir.2000)).

Mr. Bisher cannot establish an unusually suggestive temporal proximity between his requests for FMLA leave and his termination. Mr. Bisher's last approved FMLA leave before Amtrak brought termination charges against him expired in May of 2020. (DSUMF ¶¶ 84, 91, 93, 98.) Between May 2020 and September 11, 2020, Mr. Bisher received a verbal warning and written warning for attendance violations, as well as a reminder from Ms. Drew that he needed to re-certify his FMLA leave. (DSUMF ¶¶ 92-93, 96.) Nonetheless, he continued to accrue additional occurrences under the National Attendance Policy in September 2020. (DSUMF ¶ 97.) On October 19, 2020 Mr. Bisher was notified via letter that he was being charged with violating Amtrak's National Attendance Policy and, if found culpable, his employment would be terminated. (DSUMF ¶ 103.) It was only after he learned of the disciplinary charges that Mr. Bisher requested FMLA leave, on October 21, 2020. (DSUMF ¶ 107.) The fact that Mr. Bisher requested FMLA leave *after* Amtrak initiated termination proceedings shows that Amtrak did not retaliate against Mr. Bisher for requesting FMLA leave. *See Burch v. WDAS AM/FM*, No. CIV.A. 00-4852, 2002 WL 1471703, at *13 (E.D. Pa. June 28, 2002) ("Plaintiff cannot sustain his FMLA retaliatory discharge claim in the face of uncontroverted evidence that the decision to terminate him was made and communicated to the employer's business manager for action before plaintiff requested or took

leave.").

Moreover, Mr. Bisher applied for (and was granted) intermittent FMLA leave several times between March 2015 and November 2020, and Amtrak continued to employ him until November 2020. (DSUMF ¶¶ 35, 43, 49, 52, 57, 114) The temporal proximity between Mr. Bisher's prior FMLA leaves of absence and his termination are not unusually suggestive. *See, e.g., Philpot v. Amtrak*, No. CIV.A. 10-1276, 2011 WL 5339030, at *8 (E.D. Pa. Nov. 3, 2011) (temporal proximity of a nearly three-year lapse between the protected conduct and the alleged retaliation did not establish causation); *Smith v. ABF Freight Sys., Inc.*, Case No. 04-2231, 2007 WL 3231969, *11 (M.D. Pa. Oct. 29, 2007) (temporal proximity of one and one-half months cannot establish causation); *Mar v. City of McKeesport,* Case No. 05–19, 2007 WL 2769718, at *4 (W.D. Pa. Sept. 20, 2007) (holding that temporal proximity of three months could not establish causation); *Killen v. N.W. Human Servs., Inc.,* Case No. 06–4100, 2007 WL 2684541, at *8 (E.D. Pa. Sept. 7, 2007) (holding that temporal proximity of seventeen days could not establish causation).

Because the timing of Mr. Bisher's leave requests and his termination are not unusually suggestive, he must show that Amtrak harbored retaliatory animus against him. *Cheatom v. City of Philadelphia*, No. CV 19-4803, 2020 WL 354826, at *3 (E.D. Pa. Jan. 17, 2020). Mr. Bisher cannot put forth any evidence of retaliatory animus to support a causal connection between any FMLA-protected activity and his termination. To the contrary, Amtrak granted every one of Mr. Bisher's requests for FMLA leave during his employment. (DSUMF ¶¶ 35, 43, 49, 52, 57, 114.) Mr. Bisher's supervisor, Ms. Drew, encouraged Mr. Bisher on multiple occasions to cite his FMLA when calling out of work to avoid accruing occurrences and potential discipline. (DSUMF ¶ 87.) Additionally, before terminating Mr. Bisher's employment, Mr. Jerew confirmed with Labor Relations that Mr. Bisher's September absences were not protected FMLA leave. (DSUMF ¶¶

131-35.)

Accordingly, Mr. Bisher cannot establish a *prima facie* case of FMLA retaliation.

**2. Even If Mr. Bisher Could Establish a *Prima Facie* Case of FMLA Retaliation, He Cannot Show Pretext.**

Amtrak has articulated a legitimate, nonretaliatory reason for Mr. Bisher's separation—his continuous violations of the National Attendance Policy—and Mr. Bisher cannot show that this reason was a pretextual for the reasons discussed in Section III(D)(1) *supra*. Mr. Bisher fails to present any evidence to suggest that his request for FMLA leave was the real reason for his termination, and the evidence shows just the opposite. If Mr. Bisher felt that he was receiving occurrences and being disciplined for FMLA-protected absences, he could have made a complaint to Human Resources or management or filed a grievance with his union, but he did not. (DSUMF ¶ 78.)

Accordingly, Amtrak is entitled to summary judgment on Mr. Bisher's FMLA retaliation claim.

**F. Mr. Bisher's FMLA Interference Claim Fails As a Matter of Law.**

As an initial matter, "where a plaintiff presents both an FMLA interference claim and a retaliation claim on the basis that a defendant took an adverse employment action against him because he requested FMLA leave, those claims should be analyzed as a single FMLA retaliation claim." *See Woodard v. Scranton Quincy Hosp. Co.*, LLC, 2018 WL 6018902, at *3–4 (M.D. Pa. Nov. 16, 2018) (denying plaintiff's motion to amend complaint where plaintiff sought to add FMLA interference claim on same facts as his FMLA retaliation claim) (citations omitted); *Mascioli v. Arby's Rest. Grp., Inc.,* 610 F. Supp. 2d 419, 432 (W.D. Pa. 2009) ("Plaintiff's argument with respect to her interference claim is that defendant took an adverse employment action because she requested leave. This is, in essence, identical to her retaliation claim asserted in count two.").

Here, Mr. Bisher has pled his FMLA retaliation and interference claims in the same paragraphs of his Complaint, based upon the same facts, claiming that Amtrak knew Mr. Bisher had been granted FMLA leave and terminated his employment as a result. (ECF 1, ¶¶ 50-56). Because Mr. Bisher's FMLA interference claim is essentially the same as his retaliation claim, this Court should grant summary judgment for the same reasons.

Even if analyzed separately, Mr. Bisher's interference claim fails. To establish a claim for interference under the FMLA, Mr. Bisher must show that (1) he was an eligible employee under the FMLA; (2) Amtrak was an employer subject to the requirements of the FMLA; (3) he was entitled to FMLA leave; (4) he gave notice to Amtrak of his intention to take FMLA leave; and (5) he was denied benefits to which he was entitled under the FMLA. *Capps v. Mondelez Glob.* LLC, 147 F. Supp. 3d 327, 334 (E.D. Pa. 2015), *aff'd*, 847 F.3d 144 (3d Cir. 2017).

#### 1. Mr. Bisher Cannot Establish That Amtrak Denied Benefits to Which He Was Entitled Under the FMLA.

Mr. Bisher gave Amtrak notice of his intention to take FMLA leave on October 21, 2020 – after he learned of the disciplinary charges brought against him. (DSUMF ¶ 107.) Amtrak received the completed paperwork from Mr. Bisher's doctor on or around October 28, 2020. (DSUMF ¶ 108.) On November 2, 2020, Amtrak placed Mr. Bisher's leave request under review pending receipt of additional information from his doctor (specifically, dates of treatment). (DSUMF ¶ 112.) On November 9, 2020, Amtrak received supplemental information from Mr. Bisher's doctor. (DSUMF ¶ 113.) On November 13, 2020, Amtrak approved Mr. Bisher's FMLA

leave from October 14, 2020 through October 14, 2021. (DSUMF ¶ 114.)[7] Accordingly, Mr. Bisher cannot show that Amtrak denied him benefits to which he was entitled under the FMLA.[8]

Mr. Bisher will likely argue that Amtrak interfered with his FMLA rights by refusing to retroactively backdate his leave 41 days to September 10, 2020 – a date that would cover the three occurrences that led to his termination.[9] This argument, however, is baseless for several reasons.

**a. Mr. Bisher Did Not Provide Timely Notice of His Need for FMLA Leave.**

Amtrak was not required to retroactively backdate Mr. Bisher's leave because he did not provide timely notice of his need for leave. *See Njaim v. FCA US LLC*, 764 F. App'x 513, 515 (6th Cir. 2019) (employer was not required retroactively designate absences as FMLA covered leave when employee failed to give notice before his absences); *Priddy v. Moses H. Cone Mem'l Hosp. Operating Corp.*, No. 1:18CV405, 2020 WL 2572285, at *6 (M.D.N.C. May 21, 2020), *aff'd*, 855 F. App'x 166 (4th Cir. 2021) (employer was not required to retroactively designate approval of plaintiff's FMLA leave request when plaintiff submitted her request beyond the employer's 15-day deadline). The FMLA requires an employee to provide their employer at least 30 days advance notice before FMLA leave is to begin if the need for leave is foreseeable. *See* 29 C.F.R. § 825.302(a). If 30 days' notice is not practicable, notice must be given as soon as practicable. *Id.*[10] "As soon as practicable" means as soon as both possible and practical taking

---

[7] Amtrak's Leave Management Department would not have been aware of Mr. Bisher's disciplinary history or pending disciplinary hearing at the time they were considering his October 21, 2020 leave request. (DSUMF ¶ 119.)

[8] To the extent Mr. Bisher argues that Amtrak interfered with his FMLA rights throughout his employment, his argument fails because he admitted that Amtrak never denied any of his requests for FMLA leave. (DSUMF ¶ 145.)

[9] Notably, the FMLA paperwork completed by Mr. Bisher's doctor initially indicated that his condition began on October 22, 2020, but that date was crossed out and replaced with a start date of September 10, 2020. (DSUMF ¶¶ 110-11.)

[10] Amtrak's FMLA Policy contains the same language. (DSUMF ¶ 5.)

into account all of the facts and circumstances in the individual case and should be the same day or the next business day. *See* 29 C.F.R. § 825.302(a); *see also Mutz v. Agere, Inc.*, No. CIV.A. 04-5082, 2005 WL 1715657, at *3 (E.D. Pa. July 21, 2005) (stating that "as soon as practicable" in this regulation means "no more than two days after learning of the need for leave" unless "extraordinary circumstances prevent such notice").

Mr. Bisher admits that he did not provide Amtrak with 30 days' notice of his need for FMLA leave. He notified Amtrak of his need for leave on October 21, 2020, but claims that his condition necessitating the leave began on September 10, 2020. (DSUMF ¶ 107, 111.) If his condition did in fact begin on September 10th, Mr. Bisher did not provide notice of his need for leave "as soon as practicable." Instead, he waited 41 days to request FMLA leave, just two days after learning that Amtrak brought disciplinary charges against him for violating the National Attendance Policy. (DSUMF ¶ 99, 106, 107.) Mr. Bisher was aware that he was required to provide 30 days' notice of his need to leave if the leave was foreseeable, or as soon as practical if the need for leave was not foreseeable, and was familiar with the process for requesting leave. (DSUMF ¶¶ 38-39.) Amtrak's FMLA Policy provides that if proper notification of the need for leave is not given, absences may be governed by Amtrak's National Attendance Policy. (DSUMF ¶ 8.)

**b. Mr. Bisher Has Not Identified Any Unusual Circumstances That Prevented Him From Providing Amtrak With Timely Notice of His Need for FMLA Leave.**

The FMLA regulations allow an employer to require an employee to comply with its policy for requesting leave, absent unusual circumstances. See 29 C.F.R. § 825.302(d); *see also* 29 C.F.R. § 825.303(c) ("If an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA–protected leave may be delayed or denied."); *Soutner v. Penn State Health*, No. 1:18-CV-271, 2020 WL 1545768,

at *1, *6 (M.D. Pa. Feb. 13, 2020) (finding the defendant within its right to deny plaintiff's FMLA leave where the plaintiff failed to comply with the company's FMLA notice policy). Mr. Bisher has not identified any unusual circumstances that prevented him from providing Amtrak with notice of his need for leave. He claims that he was unable to get a doctor's appointment due to the COVID-19 pandemic, and therefore he could not request the FMLA leave paperwork. (DSUMF ¶ 126.) This argument is not credible. Mr. Bisher testified that every time he requested intermittent FMLA during his employment with Amtrak, he followed the same process: he contacted Leave Management and requested FMLA paperwork first, then brought the paperwork to his doctor for completion, then returned the paperwork to Amtrak. (DSUMF ¶ 128.) Mr. Bisher knew he was not required to schedule a doctor's appointment before requesting the FMLA paperwork and notifying Amtrak of his need for FMLA leave. (*Id.*) Moreover, Mr. Bisher admitted that he participated in telehealth appointments with his doctor and spoke to his doctor on the phone during the pandemic. (DSUMF ¶ 127.) When asked why he did not request FMLA leave before October 21, 2020, Mr. Bisher could not provide a reason. (DSUMF ¶ 128.)

Mr. Bisher's "excuse" that he was unable to schedule a doctor's appointment does not constitute unusual circumstances. *See, e.g., Int'l Bhd. of Elec. Workers Loc. 1600 v. PPL Elec. Utilities Corp.*, No. 5:16-CV-04675, 2017 WL 6547138, at *8 (E.D. Pa. Dec. 22, 2017) (plaintiff's claim that she was too "incoherent" to contact the leave provider because she was experiencing severe anxiety did not constitute unusual circumstances); *Acker v. Gen. Motors LLC*, No. 4:15-CV-706-A, 2016 WL 3661466, at *4 (N.D. Tex. July 1, 2016), *aff'd sub nom. Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784 (5th Cir. 2017) (plaintiff's claim that "at times his condition subjects him to fatigue, dizziness, and disorientation . . . without more information" was not sufficient to

constitute unusual circumstances). Accordingly, his argument that Amtrak should have backdated his FMLA leave by 41 days fails.

#### c. Amtrak Followed Its Guidelines When Backdating Mr. Bisher's FMLA Leave.

Amtrak's Leave Management Department explained to Mr. Bisher that they were unable to backdate his leave 41 days to September 10, 2020 because he did not provide the required notice of his need for leave. (DSUMF ¶ 144.) They did, however, backdate his leave 14 days from receipt of the completed FMLA paperwork pursuant to its guidelines.[11] (*Id.*) Mr. Bisher may disagree with Amtrak's Leave Management Department's backdating guidelines, but that does not save his FMLA interference claim. *See Fuentes*, 32 F.3d at 765.

Accordingly, Mr. Bisher's FMLA interference claim fails, and Amtrak is entitled to summary judgment on that claim.

## IV. CONCLUSION

Based on the foregoing, Amtrak respectfully requests that this Court grant its Motion for Summary Judgment and dismiss Mr. Bisher's Complaint in its entirety, with prejudice.

[11] Even if Amtrak backdated Mr. Bisher's leave 30 days to September 28, 2020, his September occurrences that led to his termination would not have been covered by approved FMLA leave.

Respectfully submitted,

*/s/ Nina K. Markey*

Nina K. Markey (PA # 201801)
Kimberly Saginario (PA #325271)
**LITTLER MENDELSON, P.C.**
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102.1321
Telephone: 267.402.3000
Facsimile: 267.402.3131
nmarkey@littler.com
ksaginario@littler.com
*Attorneys for Defendant*

Dated: September 25, 2023

**CERTIFICATE OF SERVICE**

I, Nina K. Markey, hereby certify that on the 25th day of September, 2023, the foregoing document was filed using the Eastern District of Pennsylvania's ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon all counsel of record.

William J. Fox
**LAW OFFICES OF WILLIAM J. FOX, P.C.**
1626 Pine Street
Philadelphia, PA 19103
wjf@billfoxlaw.com
*Attorney for Plaintiff*

*/s/ Nina K. Markey*
Nina K. Markey