**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RAYMOND W. BISHER** | : | |
| **Plaintiff** | : | **NO. 22-CV-2094** |
| **v.** | : | |
| **NATIONAL RAILROAD PASSENGER CORP. A/K/A AMTRAK** | : | |
| | : | |
| **Defendant** | : | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**
**STATEMENT OF FACTS**

## I. Introduction - Background

Plaintiff began his employment with Amtrak in 1990. From Plaintiff's perspective, the key time frame of material events in this action is from March of 2020, when the Covid shutdown began, until November 2020, when Plaintiff was discharged. Plaintiff was 55 years old at the time he was discharged. Plaintiff also suffers from the disability of Anxiety. As a result of his disability, in 2015, he applied for intermittent leave under the FMLA. (See Plaintiff's Verified Statment, Ex. "1"). Amtrak granted him intermittent FMLA in most years between 2015 and May of 2020. Plaintiff's last full year of FMLA was between May of 2019 and May of 2020. When Plaintiff's symptoms flared up, he would take leave from work on an intermittent basis. In the years that Plaintiff had intermittent FMLA, he never exceeded the 12 weeks per annum of leave allowed under the FMLA.

In March of 2020, the world changed due to Covid. As the testimony and evidence will

show in Plaintiff's Response below and in Plaintiff's Counterstatement of Facts, Amtrak loosened its rules regarding attendance during Covid. As a result of Covid, ridership on Amtrak dropped more than 90%. During this time, many employees were told to work from home (office workers) or stay home and not work at all (station workers) because of the pandemic. Many were told to take days off because there was no work. Many employees who reported to work were sent home early because there was no work. None of these employees were cited for violating Amtrak's attendance policy.

In March of 2020, Plaintiff was working as a Redcap. Redcaps primarily work on the train platforms and assist passengers on and off the trains with their luggage. Because there were so few trains, there was no work for the Redcaps. In meetings with managers, Plaintiff was told that the attendance rules would be relaxed. Many managers testified that Amtrak did relax the attendance policies, but Amtrak never put this policy in writing. This meant that Amtrak could apply the attendance policies subjectively - - and, in the case of Plaintiff, to his detriment. Due to the difficulty of getting doctor appointments during Covid (unless an emergency) and because Amtrak had relaxed its attendance policy, Plaintiff did not reapply for intermittent FMLA in May of 2020.

Ultimately, this case turns on three instances in September of 2020 where Plaintiff is alleged to have violated Amtrak's time and attendance policies:

1. On September 9, 2020, Plaintiff arrived 3 minutes late for work;
2. On September 14, 2020, Plaintiff arrived 4 minutes late for work; and,
3. On September 25, 2020, Plaintiff called out sick.

Plaintiff technically violated Amtrak's attendance policy of having three occurrences within a 30 day period. However, the relaxed attendance policy was still in effect as of September 2020. In

September of 2020, there were still very few passengers traveling on Amtrak trains. Discharging an employee for being 3 minutes late and 4 minute late, in the guise of violating the attendance policy, is very harsh. Discharging an employee for taking a sick day, who had a five year history of intermitten FMLA due to anxiety is very harsh.

It is against this backdrop that Amtrak strains, through a lengthy fact statement and brief, to justify their actions in discharging Plaintiff, who at the time of discharge, was approximately two months from reaching 30 years of service. The key decision makers and Amtrak were aware of Plaintiff's disability, were aware that he had been approved for intermittent FMLA for many years and were aware that he had did not reapply for FMLA in May of 2020. They knew his age and that he was two months from obtaining 30 years of service.

**II. Plaintiff's Response to Defendant's Statement of Facts**

1-2. Denied. Paragraphs 1 and 2 are denied as a conclusion of law and/or improper argument to which no response is required. By way of further answer, to the extent that Defendant did have anti-harassment and discrimination policies, it did not follow those when dealing with Plaintiff. Further, if Amtrak had a zero tolerance policy against discrimination, then it would not have chosen to discharge Plaintiff.

3 - 9. Denied. Paragraphs 3 and 9 are denied as a conclusion of law and/or improper argument to which no response is required. By way of further answer, to the extent that Defendant did have FMLA policies, medical leave policies and an absence policy, when Defendant applied these policies to Plaintiff and discharged Plaintiff, it applied these policies in a discriminatory and retaliatory manner. Further, if Amtrak had a zero tolerance policy against discrimination, then it would not have chosen to discharge Plaintiff. For approximately five

years, Plaintiff had received FMLA intermittent leave due to suffering from anxiety. (Plaintiff's Verified Statement, ¶ 3-4, Ex. "1" and see FMLA forms, Ex. "3")

Plaintiff further objects to paragraphs 3- 9 to the extent that it relies upon the hearsay statement of Latoya Warner. (See Ex. "B" to Defendants Statement of Facts)

10-13. Denied. Amtrak had a custom of backdating FMLA more than 30 days from when the doctor signed a medical certification. In the case of Plaintiff, Amtrak previously back dated his request for FMLA from November 8, 2017, the date his doctor completed the FMLA medical certification to October 6, 2017, a backdate period of 32 days. (Ex. "1", ¶ 13) This meant that Plaintiff was covered for any absences that he took after October 6, 2020 due to his anxiety that he would not be cited for violating Amtrak's attendance policy.

14. It is admitted that Plaintiff was hired by Amtrak on May 17, 1990.

15. Admitted.

16. Admitted.

17. Admitted.

18. Denied as stated. It is admitted that Ms. Drew was on of the managers that supervised Plaintiff during the period of March of 2020 until Plaintiff was discharged. ( Ex. "1", ¶ 10)

19. Admitted.

20. Admitted.

21. Admitted in part. It is admitted that Plaintiff moved to the position of Foreman Station Cleaner in or around October 2020. It should be noted that Plaintiff transferred to another position because, since the Pandemic began in March of 2020, there was little or no

passengers riding Amtrak trains and, therefore, there was virtually no work for Redcaps to do. (N.T. Bisher, p. 49-50, Ex. "2")

22. Denied as a fact and as a conclusion of law. By way of further answer, Plaintiff's discharge was retaliatory because he had engaged in protected conduct for many years due to his disability and because he had applied for and received FMLA benefits. Plaintiff's discharge was because of his age, 55, at the time of dischage. This is especially egregious given that Plaintiff was within two months from obtaining 30 years of service. As set forth in the Counter Statement of Facts, Amtrak decision makers were aware of Plaintiff's age and length of service at the time of his discharge. (N.T. Jerew, p. 56, Ex. "9"; N.T. Richtarich, p. 38-40, Ex. "6")

23. Admitted.

24. Denied as a conclusion of law to which no response is necessary. Plaintiff was discharged for allegedly violating Defendant's attendance policy. He was not discharged for violating the TCU Collective Bargaining Agreement (CBA). By way of further answer, the CBA addresses the grievance and appeal procedure when a union member disputes discipline. It does not set forth a list of Amtrak rules for which employees may receive discipline.

25 - 30. Denied as conclusions of law and also denied as not being material facts. By way of further answer, the CBA speaks for itself.

31. Denied. Paragraph 31 is denied as a conclusion of law and/or improper argument to which no response is required. Paragraph 31 is further denied as not being a material fact. By way of further answer, Plaintiff was not afforded progressive discipline in light of the fact that Defendant had relaxed the rules regarding attendance during Covid. In March of 2020, Plaintiff's supervisor, Therese Drew, informed Plaintiff and other employees working at the 30th

Street Station that, because of Covid, the rules regarding attendance would be relaxed. (Verified Statement of Plaintiff, ¶ 8, 11, Ex. "1")

32-33. Denied. Paragraphs 32-33 are denied as a conclusions of law and/or improper argument to which no response is required. Paragraphs 32-33 are further denied as not being a material fact.

34. Admitted in part. Plaintiff began getting symptoms of anxiety in 2012. As a result of his symptoms, he treated with a psychiatrist approximately 15 times in 2014. (Ex. "2", p. 71-73) Defendant has accepted that Plaintiff suffers from a serious medical condition since at least 2015 when Defendant first approved Plaintiff's request for intermittent FMLA leave. (See FMLA Documents from 2015 - 2019, Ex. "3")

35. Admitted.

36. Admitted.

37-39. Denied as not material facts. The general process of how employees and Plaintiff apply for FMLA is not material. By way of further answer, what is material is that Amtrak approved Plaintiff's applications for intermittent leave under the FMLA from 2015 until May of 2020. During this time Amtrak was aware, by virtue of Plaintiff's repeated applications for intermittent leave under the FMLA, that Plaintiff had a disability, anxiety. (See Exhibit "3") The 30 day rule for giving notice does not apply when an employee is approved for intermittent leave. (Exhibit "3")

40-44. Admitted in part. It is admitted that Plaintiff was approved for intermittent medical leave due to his disability, anxiety. (Ex. "3") The FMLA approval documents otherwise speak for themselves.

45. Denied as a conclusion of law and/or as argument.

46. Admitted in part. It is admitted that Amtrak did not back date the FMLA approval to March 9, 2015. It is denied as a conclusion of law and/or as argument that Amtrak was following policy by not back dating the approval to March 9, 2015. In November of 2017, Amtrak back dated Plaintiff's intermittent FMLA application for a period of 32 days. (Ex. "1", ¶ 14)

47. Admitted in part. It is admitted that Plaintiff sought FMLA leave due in May of 2017.

48. Admitted in part. It is admitted that Plaintiff submitted documents from his doctor to support his request for FMLA intermittent leave.

49. Admitted in part. It is admitted that on June 30, 2017, Amtrak approved Plaintiff's request for FMLA for the period of May 31, 2017 to June 26, 2017.

50 - 53. Admitted in part. It is admitted that Plaintiff applied for FMLA intermittent leave and provided supporting information from his doctor. It is also admitted that Plaintiff's application for intermittent leave was approved by Amtrak for the period between October 6, 2017 and October 6, 2018. It should be noted that Amtrak back dated the start of Plaintiff's FMLA for a period of 32 days. (See Warner Statement, Ex. "B", ¶ 15,to Defendant's Statement of Facts.)

54. Admitted. By way of further answer, on November 8, 2017, Amtrak backdated its approval of Plaintiff's application for FMLA for a period of 32 days (November 8th back to October 6th) from the date that Amtrak of Plaintifff's FMLA Medical Certificaton. Amtrak back dated the start of Plaintiff's FMLA to October 6, 2017. (Exhibit "1", ¶ 14) In 2020, Plaintiff

submitted the medical certification on October 23, 2020. Amtrak refused to back date Plaintiff's FMLA for a period of 30 days. If Amtrak backdated the FMLA to begin 30 days earlier to September 23, 2020, then Plaintiff would have had only two occurences within 30 days. Plaintiff's sick call out on September 25, 2020 would have been deemed FMLA. Under these circumstances, he only would have had two occurrences within 30 days. (Ex. "1", ¶ 14-15)

55-58. Admitted in part. It is admitted that Amtrak approved Plaintiff intermittent leave for the period of May 8, 2019 to May 7, 2020 and that Plaintiff's doctor provided a medical certification supporting Plaintiff's application for intermittent leave.

The approval letter was addressed to Plaintiff's supervisor, Therese Drew. It states in part:

> Dear Therese,
>
> . . . . . .The request is based on a serious health condition that makes the employee unable to perform the essential functions of their job. . . . . .
>
> The healthcare provider has given us an estimate of the frequency and duration of flare ups and related incapacity the employee may have as absences: **Flare-ups: 1 day per week for 8 hours per episode.** . . . . .

(See May 10, 2019 Amtrak FMLA approval letter addressed to Ms. Drew and cc'd to Richard Funk. Ex. "3")

59. Denied. Paragraph 59 is denied as a conclusion of law and/or improper argument. By way of further answer, Amtrak had backdated Plaintiff's application a period of 32 days in 2017. (See answers to ¶¶ 50-54 above.)

60. Admitted in part. It is admitted that Plaintiff's supervisors, including Ms. Drew, and

secondary supervisor, Richard Funk, knew that Plaintiff suffered from the disability of Anxiety and that Plaintiff was approved for intermittent leave.

61. Denied. The letters may not have indicated that Plaintiff suffered from Anxiety but the FMLA medical certification completed by Dr. John Kane did. Amongst other things, Plaintiff's doctor stated: "pt. having episodes of anxiety, difficulty concentrating, insomnia. Also [has] sleep disruption and chest/heart palpitations." Dr. Kane also states: "Pt. Must be on intermittent schedule as he is unable to perform work duties when symptoms arise. . . ." (FMLA Medical Certification of Dr. Kane dated April 17, 2015, Ex. "3") Amtrak's approval letters also described that Plaintiff's condition caused **"flare ups"** in bold letters. ( See ¶¶ 55-58 above) This information is consistent with some body experiencing a permanent mental health condition.

62. Admitted in part. Denied in part. It is admitted that Plaintiff did not reapply for intermittent FMLA from May 9, 2020 through September of 2010. Plaintiff did file for FMLA in October of 2020. In the beginning of Covid, Plaintiff had difficulty getting a doctor's appointment and understood that doctors were only seeing patients on an emergency basis. (Ex. "1" ¶ 12) Plaintiff had also been informed that, because of Covid, the attendance rules were being relaxed and that progressive discipline would not be issued regarding attendance. On October 21, 2020, Plaintiff contacted Leave Management and requested to apply for FMLA intermittent leave due to his anxiety. (Ex. "1" ¶ 15 and see Statement of Jennifer Bohn, Ex. "19")

Plaintiff requested to Amtrak that it include his absence from work on September 25, 2020 as FMLA leave. Even though Amtrak had backdated FMLA start dates in the past, Amtrak refused to do it in October 2020. (See Ex. "13")

63-65. Admitted in part. Denied in part. It is admitted that Amtrak has an attendance policy. It is denied that Amtrak applies it evenly to all employees. Further, in 2020, due to Covid, Amtrak relaxed its attendance policies. (See N.T. of T. Drew, p. 29:17-24, Ex. "4"; Statement of Jennifer Bohn, Ex. "19")

66. Admitted. By way of further answer, in the past, Amtrak had applied absences incurred before Plaintiff applied for FMLA as covered, some of which were more than 30 days after Plaintiff has applied for FMLA. (See ¶ 54 above.)

67. Admitted. By way of further answer, Plaintiff was cited for being 8 minutes late on September 9, 2020 and 9 minutes late on September 14, 2020. Put another way, on September 9, 2020, Plaintiff arrived at 3 minutes past the grace period and on September 14th, he was 4 minutes past the grace period. (See Amtrak's September 2020 Time Sheet for Plaintiff Ex. "5")

68. Admitted in part. Denied in part. It is admitted that an employee may get an occurrence for arriving past the five minute grace period. It is denied that all employees are treated the same when violating the attendance policy. Further, the attendance policy was relaxed during Covid for all 30th Street employees except for Plaintiff. (N.T. of Drew, p. 29:17-24, Ex. "4"; N.T. Richtarich, p. 35:1-14, Ex "6")

69-70. Admitted in part. It is admitted that Plaintiff followed the call out procedure pursuant to Amtrak's Marking Off Policy. Plaintiff also testified that he would state a reason when calling out. (See Marking Off Policy, Ex. "7" and N.T. Bisher, p. 57:24-25, 58:1-6, Ex. "1") It should be noted that the two hour call out policy did not apply regarding intermittent FMLA. (Ex. "1" ¶ 13)

71. Denied. Ms. Drew actually gave equivocal testimony on the call out procedure. (N.T.

Drew, p. 55:3-10, Ex. “4”)

72. Denied. Plaintiff followed the correct call out procedure. (See Amtrak Mark Off Policiy, Ex. “”7"; and, Ex. “2", p. 57:24-25, 58:1-6)

73. Denied. Paragraph 73 is denied as argumentative and hearsay. By way of further answer, for the material time, September of 2020, Plaintiff was not actively on FMLA because of the difficulty in seeing his doctor during Covid and because he had been told by his managers that the attendance policy was relaxed. (See paragraphs 63-65 above and N.T. of Drew, p. 29:17-24, Ex. “4"; N.T. Richtarich, p. 35:1-14, Ex “6". See Bohn Statement, Ex. “19")

As to the material sick call out on September 25, 2020, Plaintiff properly followed the call out policy (See Amtrak Marking Off Policy, Ex. “7”)

74. Denied. Ms. Drew clearly stated that the attendance policy was relaxed. (Ex. “4", p. 29:17-24 and see Bohn Statement, Ex. “19"). Funk actually denied that the attendance policy was relaxed. He testifed:

> Q. Were the attendance policies relaxed in that first year of COVID?
>
> A. No.

(N.T. Funk, Ex. “8”, p. 20:10-12) Christopher Richtarich, Esquire, from Amtrak’s Labor Relations Department testified that attendance was relaxed during Covid. (N.T. Richtarich, p. 35:1-14, Ex. “6"). Michael Jerew, Superintendent, denied that the attendance rules were relaxed during Covid. (N.T. Jerew, Ex. “9”, p. 20:25, 21:1-7)

75. Admitted in part. It is only admitted that employees suffering from Covid were excused from attending work. This was a requirement that existed pursuant to COVID 19 Executive Orders issued by the Commonwealth of Pennsylvania and the U.S.A.

76. Denied. See answer to paragraph 74 above.

77-85. Denied as not material and not relevant. By way of further answer, the material facts regarding Plaintiff's discharged occurred between May and October of 2020. The focus of this case is the attendance occurrences from September of 2020, when Amtrak disregarded its Covid relaxed attendance policy and pursued the ultimate discipline of discharge against Plaintiff. (See Ex. "5")

86-88. Denied as not material and not relevant. By way of further answer, Defendant cites incidents of when Plaintiff called out while was on intermittent FMLA. Amtrak's policy was not to count call outs as occurrences when employees were on FMLA. (See paragraph 66 above.)

89. Denied. Paragraph 89 is denied as not being a material fact. By way of further asnswer, Plaintiff never saw the document cited in footnote 89 of Defendant's Statement of Facts. (N.T. Bisher, p. 125:10-18, Ex. "2") The document had contradictory dates on it making it unreliable and suspect. (Ex. "2", p. 127:19-25, 26)

90. Objection. The contents of paragraph 90 are argument and are not material facts.

91. Objection. This issue was already addressed in Paragraphs 57-58 of Defendant's Statement of Facts. (See Plaintiff's response to ¶¶ 57-58 herein.)

92. Denied. In her deposition, Ms. Drew could not recall any of the conversations she had with Mr. Bisher in August or September of 2020 other than to state that she discussed the attendance policy. (N.T. Drew, p. 70:17-25, 71:1-25, 72:1-4, Ex. "4") By way of further answer, during 2020, the attendance policy was relaxed. (See Paragraphs 62 and 74 above.)

93. Denied. Drew's Declaration contradicts her testimony. (See paragraph 92 above.)

The document attached to Drew's declaration is rank hearsay, not reliable and directly contradictory to her testimony. (N.T. Drew, p. 70:17-25, 71:1-25, 72:1-4, Ex. "4")

94. Admitted in part. It is only admitted that during Covid in 2020, Ms. Drew informed Mr. Funk on of Plaintiff alleged attendance violations.

95. Denied. Mr. Bisher did not recall these incidents and the email is hearsay. (Ex. "2", p. 135:1-3) By way of further answer, during 2020, the attendance policy was relaxed. (See paragraphs 62 and 74 above.)

96. Denied. The allegations contained in Paragraph 96 are not material and/or are argumentative. By way of further answer, Plaintiff testified as to the attendance policy as follows: "And, again, this was during the pandemic. And during this time, we were being told we could leave any day we wanted early, and not be paid. And one day a week we were told we could leave anytime we wanted, and be paid." Mr. Bisher understood that the purpose of the relaxed attendance rules was to reduce the number of employees working during the pandemic. (Ex. "2", p. 138:18-25 - 139:1-15, and see paragraphs 62 and 74 above and the Bohn Statement, Ex. "19".)

97. Admitted in part. Denied in part. It is admitted that Plaintiff was disciplined for being 3 minutes late, 4 minutes late and for calling out sick in September of 2020. It is denied that Defendant was seeking to enforce it attendance policies. Defendant was seeking to punish Plaintiff because of his disability and prior protected conduct. Amtrak was also singling out Plaintiff because of his age, 55 and the fact that he was within a couple months of achieving the milestone of 30 years of service. (See Plaintiff's Complaint, Ex. "10"; Ex "1", ¶ 16-17; and, see response to paragraph 99 below.)

98. Denied as stated. While it is admitted that Mr. Bisher was not actively on FMLA from May 8, 2020 until September of 2020, Amtrak was well aware of his disability and his need for intermittent leave. (Ex. "4" p. 44:2-15, 45:9-15) Drew admitted that she received a letter from Leave Management when an employee was on intermittent FMLA. (Ex. "4" p. 35:8-25, 36:1 and see May 19, 2019 FMLA approval letter addressed to Ms. Drew, Ex. "3") Amtrak violated its Covid relaxed attendance policy when it came to Mr. Bisher. It also failed to offer him the opportunity to include the September 25, 2020 occurrence as part of his FMLA application that was made on October 23, 2020. (Ex. "1", ¶ 15)

99. Denied. Mr. Funk brought the charges to retaliate against Mr. Bisher because he had engaged in protected conduct for the previous five years and because he was disabled. Mr. Funk's actions were also motivated by the fact that Plaintiff was 55 years of age and had almost 30 years of credited service. Mr. Funk's own testimony and emails indicate his dislike of Plaintiff. He understood that Mr. Bisher had been on intermittent leave in the past but said that this did not alter his decision to recommend termination. (N.T. Funk, Ex. "8" p. 43:10-16). Funk claims that he felt bad that Mr. Bisher was terminated. (Ex. "8", p. 43:14-16) However, in emails at the time of the discharge, it was clear that he did not feel bad at all. He and Ms. Drew wanted Mr. Bisher to be terminated. In a November 13, 2020 email exchange between Funk and Drew with the subject line:: "CONFIDENTIAL- FMLA action regarding Bisher . . ." , they wrote:

> At 10:18 a.m. Funk wrote: "I hope they don't let this guy off the hook. . . "
>
> At 10:20 a.m. Drew responded: "WOW//Looks like they pushed it back a week [date of FMLA application]; previously it was effective 10/21 . . . "

At 10:23 a.m. Funk responded: “Not enough to cover September occurrences. . . “

At 10:32 a.m. Drew responded: “Yes that’s good.”

(See November 13, 2020 Email, Ex. “13") This email demonstrates animus of Drew and Funk toward Mr. Bisher’s protected conduct under the FMLA.

100 - 102. Denied. Paragraphs 100-102 are denied because Mr. Funk is not credible, the information cited is hearsay and Defendant had relaxed the Attendance rules during Covid. (See paragraphs 62 and 74 above and Ex. “19".)

103. Admitted in part. It is admitted that Amtrak issued Plaintiff a notice informing him that Amtrak was seeking to discharge his employment.

104-105. Denied. Whether Mr. Bisher understood that he could be terminated and present witnesses at a hearing are not material facts and/or is argumentative.

106. Admitted in part. It is admitted that Mr. Bisher did not apply for FMLA as of October 19, 2020. However, on October 21, 2020, he contacted Amtrak’s Leave Management Dept. and applied for FMLA. (N.T. Bisher, p. 152:6-11)

107. Admitted in part. It is admitted that Plaintiff applied for FMLA on October 21, 2020.

108. Denied. Dr. Kane completed the FMLA medical certification on October 23, 2020. (See Dr. Kane’s FMLA Medical Certification dated October 23, 2020, Ex. “11”)

109. Admitted in part. It is admitted that Dr. Kane’s Medical Certification states that Mr. Bisher suffers from Situational Anxiety. Otherwise, the medical certification speaks for itself. (See Ex. “11”)

110-111. Admitted in part. It is admitted that Dr. Kane indicated that the intermittent leave should be effective as to September 10, 2020. Otherwise, the Medical Certification speaks for itself. (Ex. "11")

112. Denied. Amtrak had begun its inquiry on October 21, 2020 when Plaintiff applied for FMLA and on October 23, 2020 when Amtrak received Dr. Kane's FMLA medical certification.

113. Admitted.

114. Admitted in part. Denied in part. It is admitted that Defendant approved Plaintiff's application for FMLA intermittent leave. It is denied that Defendant's approval was properly back dated to covered absences from September of 2020.

115. Denied. In the past, Amtrak back dated Mr. Bisher's FMLA applications more than 30 days. (Ex. "1", ¶ 14)

116. Denied. Amtrak should have used the application date of October 21, 2020 and should have back dated the Plaintiff's request, based on past practice, to at least September 21, 2020. Or, Amtrak could have used the date of Dr. Kane's Medical Certification, October 23, 2020, and backdated the FMLA to September 23, 2020.

117. Denied. For the reasons set forth above, Amtrak is inconsistent on how it back dates its FMLA applications.

118. Denied. The allegations contained in paragraph 118 rely on Funk's Declaration who is not credible. By way of further answer, the allegations contained in paragraph 118 are pure hearsay and argumentative.

119. Denied. Defendant's key decision makers were aware of Plaintiff's disability and

prior protected activity, and the fact that he had applied for FMLA on October 21, 2020. They had been aware that he had been approved for FMLA on multiple occasions since 2015.

120. Admitted in part. It is admitted that Plaintiff appeared before a civilian nonunion employee of Amtrak for the hearing.

121. Denied as a conclusion of law. Plaintiff was not represented by counsel. He was represented by a union employee.

122. Denied as a conclusion of law. By way of further answer, Mr. O'Connell is an Amtrak employee and is not a lawyer. (N.T. Richtarich, p. 44:22-25, 45:1-9, Ex. "6")

123. Denied as a conclusion of law and as not a material fact for purposes of Summary Judgment.

124. Objection. This is a repeated allegation. By way of further answer, it is admitted that Plaintiff was cited for three occurrences in September for being three minutes late on September 9, 2020, four minutes late on September 14, 2020 and taking a sick day on September 25, 2020. It is denied that Plaintiff violated Defendant's attendance policy because this policy was relaxed during Covid.

125. Denied as a conclusion of law and not a material fact for purposes of summary judgment. The hearing was before an Amtrak empoyee who was not a lawyer and not a member of a union where the rules of evidence are relaxed and/or rarely apply.

126-27. Admitted in part. Plaintiff testified that it was difficult getting to a doctor during the Pandemic, which was true for anybody who was not in need of emergency care or medical care due to Covid. (N.T. Bisher, p. 165:22-25, 166:20-25 - 167:1-8, Ex. "2") Further, Plaintiff understood that during Covid that the attendance policy was relaxed.

128. Denied. Amtrak takes Plaintiff's testimony out of context. It could be stated another way, when Plaintiff requested the paperwork, it was with the understanding that he would be able to see a doctor. Here, this was an issue because Plaintiff is saying that it was difficult to get an appointment with his doctor due to Covid which is the reason he did not request the FMLA paperwork in the first place. (N.T. Bisher, p. 166, 167:17-23) Paragraph 128 is further denied as not being a material fact and as argumentative.

129. Denied. Mr. O'Connell is not a lawyer - - he is an Amtrak employee and not a member of the union. He is hardly a neutral arbiter. Furthermore, he has no experience in handling FMLA, ADA and ADEA matters and such matters were not before him and would not be before him.

130. Denied. Paragraph 130 is denied as not being a material fact and as being argumentative.

131. Admitted in part. It is admitted that Jerew was "not confident" that termination was the right decision. Despite this fact, Defendant again refused to backdate Plaintiff's FMLA start date to include the September 25, 2020 illness. (See November 18, 2020 email from Jerew to Christopher Richtarich, Esquire attached as Ex. "12"; and see Ex. "1", ¶ 14)

132-35. Denied. Paragraphs 132 - 135 are denied as hearsay and as not relevant for purposes of summary judgment. Hearsay may not be used as a material fact to support granting a motion for summary judgment. It may be used in defense to a motion for summary judgment if the hearsay can be verified at trial. *See* Stelwagon Mfg. Co. v. Tarmac Roofing Sys., 63 F.3d 1267, 1275 (3d Cir. 1995); Shelton v. Univ. of Med. & Dentistry of NJ, 223 F.3d 220, 223 (3d Cir. 2000).

136. Denied. This allegation was previously made in paragraph 22 of Defendant's Statement of Facts. Plaintiff incorporates his response to paragraph 22 herein. It should be noted that Defendant wrongfully cites to Plaintiff's testimony as though Plaintiff agreed with Amtrak's alleged reason for his termination. (See testimony cited by Defendant. Footnotes 22 and 136 both incorrectly cite to pages 189-90 or Mr. Bisher testimony.)

137. Admitted in part. It is admitted that Mr. Bisher received a letter from Amtrak informing him that he was terminated.

138-141. Denied. Paragraphs 138 - 141 are denied as argumentative and not credible. Jerew, Buck, Funk and Drew, all career management employees for Amtrak, are not credible. Credibility issues must be assessed by a jury. All of these employees knew that Plaintiff was on FMLA for intermittent leave several times between 2015-2020. All of these employees had access to his FMLA records. (See response to ¶ ¶ 55-58 and 99 above)

142. Denied. Mr. Bisher could not have learned of the termination until after November 19, 2020. The termination letter is dated November 19, 2020. Mr. Bisher would not have received it before November 20, 2020. (See termination letter, Ex. "14" and N.T. Bisher, p. 189-90)

143. Denied. Paragraph 143 is denied as not being material and as being argumentative. As stated before, Amtrak had previously back dated Plaintiff's application for intermittent FMLA leave for more than 32 days . (Ex. "1", ¶ 14-15) By way of further answer, Defendant offers Plaintiff's testimony as support for its argument. However, all Mr. Bisher testified to was that the lady from HR would not back date the FMLA more than 14 days. (N.T. Bisher, p. 173:7-12)

144. Denied. Defendant misstates Plaintiff's testimony again. Plaintiff was only

confirming what was written on the Exhibit, which was objected to as unreliable. (N.T. Bisher, p. 171-73)

145. Denied. Amtrak refused to back date Plaintiff's FMLA to cover the sick day he took on September 25, 2020. Had the FMLA that Mr. Bisher initially applied for on October 21, 2020 been back dated to September 21, 2020, then the sick day Plaintiff took on September 25, 2020 would have been a covered FMLA absence. Under this set of circumstances, Plaintiff would have not had "three" occurrences within Defendant's attendance policy and would not have been subject to the discipline of termination. (Ex. "1", ¶ 14-15)

146-49. Denied. Paragraphs 146 to 149 are denied as not material, not relevant and argumentative. By way of further answer, Mr. Richtarich is a management employee employed by Amtrak and is also one of Amtrak's in-house lawyers. His job is to protect and defend Amtrack's labor decisions, including those involving the termination of employees right before he is about to reach the milestone of 30 years of service. Richtarich's determination is not credible, is biased and based on hearsay.

150. Denied. This is a repeat allegation and is not credible. Mr. Richtarich admitted that, in his position with Labor Relations, he had access to FMLA records and needed this access to perform his job. (Ex. "6", p. 46:13-18)

151. Denied. Paragraph 151 is denied a conclusion of law and as not being a material fact. By way of further answer, with regard to Amtrak's action to terminate his employment, Mr. Bisher exhausted his union remedies under the CBA. (Ex. "1", ¶ 18)

152 - 157. Denied. The allegations contained in paragraphs 152 - 157 are denied as conclusions of law and as not material facts.

158. Denied. The employees hired in or around the time that Plaintiff was discharged were substantially younger. Three employees hired as Red Caps after Plaintiff was discharged were approximately 30 years of age or younger.

159. Denied..

160. Denied. In discovery, Defendant refused to provide information beyond March 2020 to December of 2002. Two of the individuals identified by Defendant in paragraph 160 were terminated in March and June of 2021. Defendant also refused to provide information regarding the termination of any employees other than to list those that were disciplined from March of 2020 through December of 2020. These employees were identified in a March 27, 2020 letter from Counsel for Defendant. Defendant refused to provide documentation regarding union members disciplined and/or discharged from their employment. In this letter, Defendant only provided the names of individuals who were disciplined regarding attendance. (See March 27, 2020 letter attached as Ex. "15") Further, it should be noted that Mr. Funk could not identify any other employee that discharged for attendance policy violations during Covid. (Ex. "8", p. 31:24-25, 32:1-7)

*/s/ William J. Fox*
WILLIAM J. FOX, ESQUIRE
Attorney for Plaintiff
1626 Pine Street
Philadelphia, PA 19103
(215) 546-2477

Date: November 6, 2023

**CERTIFICATE OF SERVICE**

I, William J. Fox, Esquire, hereby certify that I served the foregoing Response to Statement of Facts, via ecf, upon counsel for Defendant at the address set for below:

Nina K. Markey, Esquire
Kimberly Saginario, Esquire
Littler Mendelson, P.C.
1601 Cherry Street, Ste. 1400
Philadelphia, PA 19102
Attorneys for Defendant

*/s/ William J. Fox*
WILLIAM J. FOX, ESQUIRE

Date: November 6, 2023