**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RAYMOND W. BISHER,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORP. (AMTRAK),<br><br>Defendant. | : | CIVIL ACTION<br><br>Case No. 2:22-cv-02094 |

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In its opening brief, Defendant National Railroad Passenger Corporation ("Amtrak") demonstrated that Plaintiff Raymond Bisher's ("Plaintiff" or "Mr. Bisher") claims fail as a matter of law and Amtrak is entitled to summary judgment. In Mr. Bisher's Opposition to Amtrak's motion, he fails to dispute the material facts with record evidence. Instead, Mr. Bisher attempts to create disputes by questioning the credibility of Amtrak's witnesses (without articulating any basis for doing so), relying on his own subjective assertions, and grossly misstating the record, compelling Amtrak to file this reply brief.

Appreciating that this Court entertains reply briefs only to direct the Court to authority not previously briefed (*see* Judge Surrick's Policies and Procedures), Amtrak submits this reply brief to direct the Court's attention to *Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120 (3d Cir. 1998), where a non-moving party unsuccessfully attempted to avoid summary judgment by claiming that one of the moving party's witnesses was not credible. In addition, because Mr. Bisher relies upon hearsay evidence in his Opposition to Amtrak's motion, Amtrak directs the Court's attention to *Smith v. City of Allentown*, 589 F.3d 684 (3d Cir. 2009), which supports the exclusion of such evidence. Amtrak must also highlight Mr. Bisher's misstatements of the record

to show he has failed to establish a genuine issue of material fact. Such misstatements should not be considered on summary judgment. *Economos v. Scotts Co.*, No. CIV A 05-271, 2006 WL 3386646, at *8 (E.D. Pa. Nov. 21, 2006) ("Facts alleged in a brief or motion without evidentiary support cannot be used to avoid summary judgment.").

## I. MR. BISHER MISSTATES EVIDENCE IN THE RECORD IN AN UNSUCCESSFUL ATTEMPT TO CREATE A DISPUTE OF MATERIAL FACT.

In his attempt to create the illusion of a dispute, Mr. Bisher has advanced multiple "facts" that are not supported by the record. These unsupported claims cannot create a genuine issue of material fact so as to defeat Amtrak's motion for summary judgment. *See Devico v. Genesis Healthcare, LLC*, No. CV 17-7556 (RMB/JS), 2019 WL 6318636, at *10 n.26 (D.N.J. Nov. 26, 2019) ("Obviously, unsupported factual contentions cannot create a material issue of fact that would preclude summary judgment.").

### A. Amtrak Did Not "Relax" its National Attendance Policy During the COVID-19 Pandemic.

Mr. Bisher relies heavily on his unsupported assertion that during the COVID-19 pandemic, Amtrak "loosened its rules regarding attendance" and "relaxed" its attendance policy in an effort to bolster his argument that Amtrak discriminated or retaliated against him by enforcing its attendance policy. (*See* ECF 28, pp. 2, 5-6, 9-15, 17; ECF 28-1, pp. 2, 5, 7, 9-10; ECF 28-4, pp. 5-7, 10, 14). Mr. Bisher even goes as far as to say that "[m]any managers testified that Amtrak did relax the attendance policies"; that the attendance policy was relaxed for all employees except him; and that in terminating his employment, Amtrak violated its "relaxed attendance policy." (ECF 28, pp. 2, 10-12, 14; ECF 28-4, p. 7.) None of these statements are supported by the record in this case.

Contrary to Mr. Bisher's unsupported assertions, Amtrak did not modify or relax its National Attendance Policy during the COVID-19 pandemic; rather, Amtrak made allowances only for employees who had symptoms of COVID-19 or tested positive for COVID-19. (DSUMF

¶ 74.) If an employee's absence was COVID-19-related, the employee was required to report the absence as such to Amtrak's medical group and that absence would not be counted as an occurrence because they would be placed on paid COVID-19 leave. (DSUMF ¶ 75.) Amtrak's National Attendance Policy otherwise remained in place during the COVID-19 pandemic. (DSUMF ¶ 76.) Amtrak's managers testified consistently that Amtrak did not relax its National Attendance Policy, but only modified it with respect to COVID-related absences: [1]

- <u>Richard Funk (Assistant Superintendent)</u>

Q: In any of those meetings in '20 let's limit it to that year. Did Amtrak ever come up with new written policies regarding attendance?

A: I don't know how that information came to use but it wasn't, we weren't modifying the attendance policy but we were making allowances for those employees who had symptoms of COVID or tested positive for COVID.

Q: Were the attendance policies relaxed in that first year of COVID?

A: No.

Q: Not at all?

A: No. We still had a job to do. If it was related to COVID you mark off COVID, contact medical health services. Those particular absence wouldn't be counted.

(Funk Dep. 20:2-17).

- <u>Michael Jerew (Superintendent of Station Operations and Customer Service)</u>

Q: You know, in March of '20 COVID came along and we had a great shutdown or whatever you want to call it. It's my understanding that Amtrak had some verbal policy where they relaxed the attendance rules after the shut down. Do you recall how that came about or what—first of all, do you agree was there some relaxation of the attendance policy during COVID?

[1] Mr. Bisher states that Ms. Drew testified that Amtrak's attendance policies were "relaxed" during the COVID-19 pandemic. (Drew Dep. 29:17-24.) While this is true, Mr. Bisher's counsel did not ask Ms. Drew what she meant by "relaxed." Moreover, Ms. Drew explained that during the COVID-19 pandemic, Amtrak instructed its employees not to report to work if they contracted COVID-19 or experienced symptoms, and to follow up with Amtrak's medical department, consistent with the fact that Amtrak only accommodated COVID-19 related absences during the pandemic, not that it "relaxed" general application of its National Attendance Policy as Mr. Bisher argues. (Drew Dep. 30:4-23.)

A: No, I wouldn't characterize it as a relaxation of the attendance policy. There were times, however, to limit or minimize exposure that we restructured jobs by reducing the number of hours that they were on the property just as long as it was in line with operational needs, but there was still structure behind it. People were given hours and times to be there and for how long, in which case the expectation was that they were, and had they not been, COVID was not a reason for them to not be subject to the guidelines of the attendance policy.

(Jerew Dep. 20:25-21:16).

- Christopher Richtarich (Senior Manager of Labor Relations)[2]

Q: Earlier you testified that the attendance policy was relaxed during 2020 when COVID hit. What do you mean when you say relaxed?

A: Sure. So Amtrak made the decision that the attendance violations in relation to COVID would not be subject to disciplinary procedures. So if your absence was related to COVID or COVID exposure, that would not—that would not trigger the attendance policy.

Q: And was there something that an Amtrak employee had to do to trigger that relaxation of the policy?

A: Sure. So if they called in, the typical process was that they would report to our medical group via e-mail or phone call that they had been—that they were absent in regards to COVID either because of an exposure or because they were diagnosed with COVID itself, and then from there they were put on paid COVID leave.

(Richtarich Dep. 56:5-20).

- Aaron Buck (Senior Director of Labor Relations)

Q: Are you aware of any written procedures that were drafted, and were, I guess, authoritative as to how attendance would be handled during the COVID shutdown?

A: I don't know if they were written. I believe there were some things in writing from senior leadership. But we weren't holding COVID absences as occurrences under the policy, under the attendance policy. Partly we were paying people while they were out. So, generally it was a 10-day pay cycle. We were paying them up to 10 days for each instance. Multiple people had multiple instances of COVID, being they work out there with the public. And/or even not, even if they are working with each other in a maintenance away gang. So there was a relaxed application of the

[2] Mr. Bisher incorrectly states that Mr. Richtarich is one of Amtrak's "in-house lawyers." (ECF 28, p. 20.) Rather, Mr. Richtarich is Amtrak's Senior Director of Labor Relations. The fact that he has a Juris Doctor degree does not make him an "in-house lawyer" for Amtrak.

> attendance policy to COVID absences that had to go through a specific process in order to get that protection with the medical department.

(Buck Dep. 67:1-20).

Mr. Bisher relies on a written statement from Jennifer Bohn – a Red Cap[3], not a management employee with personal knowledge of Amtrak's attendance policies. (ECF 28-3, p. 30.) Ms. Bohn states only that she was told that the attendance policy would be relaxed. (ECF 28-3, pp. 30-31.) Her statement does not state whether such "relaxation" of the policy was related to COVID-19 absences. (*Id.*) As such, Ms. Bohn's statement is not in direct conflict with the testimony of Mr. Funk, Mr. Jerew, Mr. Richtarich, and Mr. Buck, and does not create a dispute of material fact.

**B. Mr. Bisher Ignores the Fact that His History of Attendance Violations Played a Role in Amtrak's Decision to Terminate His Employment.**

In his Opposition, Mr. Bisher claims Amtrak's decision to terminate his employment because he was absent from work once and late to work twice was "harsh."[4] (ECF 28, p. 2). He fails, however, to acknowledge that he had a history of attendance issues and received both a verbal warning and written warning for excessive attendance issues in August and September 2020, just weeks before he once again violated Amtrak's National Attendance Policy. (DSUMF ¶¶ 77-96.)

The record is clear that, in determining the appropriate level of discipline for Mr. Bisher, Mr. Funk reviewed his disciplinary record. (DSUMF ¶ 100.) Because Mr. Bisher was already on a final warning, had a record of attendance policy violations (including a verbal and written warning just weeks prior), and had not changed his behavior despite receiving multiple warnings, Mr. Funk and Mr. Jerew believed

---

[3] Red Caps are union employees and are responsible for assisting passengers on and off Amtrak's trains – including handicapped passengers who need wheelchair assistance – and assisting passengers with their luggage. (DSUMF ¶¶ 17, 23.)

[4] Mr. Bisher asserts that Amtrak terminated his employment "for being 3 minutes late and 4 minutes late." (ECF 28, p. 3.) This is incorrect. The record shows that Mr. Bisher was eight minutes late on September 12, 2020 and nine minutes late on September 14, 2020. (Drew Dep. 92:19-94:13). Employees are given a five minute grace period before accruing an attendance occurrence, but if an employee is more than five minutes late, they accrue an occurrence and the five minutes is included when determining how late the employee was. (Drew Dep. 20:20-24, 75:6-15).

termination was appropriate. (DSUMF ¶¶ 92, 96, 101-102.) Thus, Mr. Bisher's attempt to disregard his disciplinary history and suggest Amtrak terminated his employment for being late to work on two occasions is misleading.

### C. The Evidence Shows the Decisionmakers Were Not Aware of Mr. Bisher's Alleged Disability or His Age.

Mr. Bisher claims that "key decision makers" were aware of his disability and of his age. (ECF 28, p. 3.) However, he provides no citations to the record in support of this claim. To the contrary, the record shows that neither Mr. Jerew nor Mr. Funk were aware that Mr. Bisher suffered from anxiety or any other disability, or even knew the reason he had taken intermittent FMLA leave. (DSUMF ¶¶ 138, 140). Neither were Ms. Drew, Mr. Buck, nor Mr. Richtarich (who were not decisionmakers with respect to Mr. Bisher's termination) aware that Mr. Bisher suffered from anxiety or any other disability, or the reason why Mr. Bisher was on intermittent FMLA leave. (DSUMF ¶¶ 139, 141, 150.)

Mr. Bisher claims, without citing to any evidence in the record, that "[a]ll of these employees had access to his FMLA records." (ECF 28, p. 19.)[5] In support of his claim, he relies on Mr. Bisher's FMLA approval letters, which only Ms. Drew and Mr. Funk were copied on. (ECF 28, p. 8, Ex. 3.) The FMLA approval letters stated (1) Mr. Bisher's FMLA leave was approved, (2) the leave request was based on a "serious health condition," and (3) the "frequency and duration of flare ups and related incapacity the employee may have as absences." (ECF 26-1, pp. 150-157.) These letters *do not* state that Mr. Bisher has anxiety or any other disability, and Mr. Bisher fails to point to any evidence in the record showing that Ms. Drew, Mr. Funk, Mr. Jerew, Mr. Buck, or Mr. Richtarich were aware of his alleged disability. (DSUMF ¶¶ 60-61); s*ee Chapman v. UPMC Health System*, 516 F.Supp.2d 506, 533-34 (W.D. Pa. 2007) (no reasonable fact finder could conclude that employer knew or might have known that plaintiff had a

---

[5] Mr. Bisher states that "Mr. Richtarich admitted that, in his position with Labor Relations, he had access to FMLA records and needed this access to perform his job." (ECF 28, p. 20, Ex. 6.) Mr. Bisher misrepresents Mr. Richtarich's testimony. To the contrary, Mr. Richtarich actually testified that, if we wanted to learn if a certain employee was on FMLA, he would have to reach out to Amtrak's FMLA department and request information. (ECF 28-2, p. 110.)

disability as defined by the ADA based on plaintiff's FMLA application noting that she had a chronic condition and needed to work intermittently). Contrary to Mr. Bisher's unsupported assertions, the record shows that Amtrak keeps FMLA information highly confidential, and that Mr. Jerew had to contact Mr. Buck to have him obtain information from Amtrak's Leave Management department regarding whether Mr. Bisher was on FMLA leave during the time of his absences. (Jerew Dep. 19:19-20:24, Ex. 4; Buck Dep. 51:1-54:17.) Accordingly, Mr. Bisher's claim fails.

Mr. Bisher also claims that "Amtrak's decision makers were aware of [his] age and length of service at the time of his discharge." (ECF 28, p. 5.) The evidence he cites in support of this assertion does not support his bold claim. Mr. Jerew testified that he knew Mr. Bisher "had been around quite a while," but he did not testify that he knew his age or years of service. (Jerew Dep. 56:10:14.) Mr. Bisher fails to cite any evidence suggesting that Mr. Funk was aware of Mr. Bisher's age or years of service. Notably, both Mr. Jerew (age 58) and Mr. Funk (age 57) are the same age or approximately the same age as Mr. Bisher (age 58), which belies an inference of age discrimination. (DSUMF ¶¶ 18-20.) *See Thomas v. Fairmount Behav. Health Sys.*, No. CIV.A. 06-523, 2007 WL 2306592, at *7 (E.D. Pa. Aug. 9, 2007) ("The decisionmaker's membership in the plaintiff's protected class weakens any inference of discrimination.").

### D. Mr. Bisher Fails to Refute that His Position Was Filled by an Employee Only Three Years Younger Than Him.

Mr. Bisher denies that his position was filled by Lamin Fulton (age 55), but fails to cite to anything in the record to support that denial. (DSUMF ¶ 159; ECF 28, p. 21). Instead, he claims that Amtrak hired three Red Caps who were 30 years of age or younger after Mr. Bisher's employment was terminated. (ECF 28, p. 21). In support of this assertion, Mr. Bisher relies solely on a written statement by Ms. Bohn, who asserts that three new employees (Jeffrey, Emily, and Nasir) were hired "after Mr. Bisher was discharged," and they "were all 30 years of age or younger." (ECF 28-3, pp. 30-31.) It is unclear, however, when these employees were allegedly hired and how Ms. Bohn would have personal knowledge

of their ages. Further, Ms. Bohn does not mention Mr. Fulton, nor does Mr. Bisher cite any evidence to refute Amtrak's claim that Mr. Fulton filled Mr. Bisher's position after Amtrak terminated his employment. As such, Mr. Bisher fails to create any genuine issue of material fact and Amtrak is entitled to summary judgment.

**E. Mr. Bisher Incorrectly States that Amtrak Backdated His FMLA Leave 32 Days In 2017.**

Relying on his own written statement, Mr. Bisher claims that in 2017, Amtrak backdated his FMLA leave 32 days from the date his doctor completed his medical certification. (ECF 28, p. 4.) Mr. Bisher is mistaken. On or about October 20, 2017, Amtrak sent Mr. Bisher an FMLA eligibility notice based on his absence on September 1, 2017. (DSUMF ¶ 50.) Amtrak received the completed paperwork from Mr. Bisher's healthcare provider on November 8, 2017. (DSUMF ¶ 51.) As explained in Amtrak's opening brief, when determining the start date for an employee's FMLA leave, Amtrak's Leave Management analysts consider several "Potential FMLA Start Dates," and if none of them apply, the analyst uses either the date the employee requested FMLA leave or the date the employee's healthcare provider signed the FMLA paperwork. (DSUMF ¶¶ 10-11.) For intermittent leave, Amtrak backdates leave up to 14 days. (DSUMF ¶12.) In 2017, consistent with its practice, Amtrak backdated Mr. Bisher's leave to October 6, 2017 – 14 days from the date he requested FMLA leave (October 20, 2017). (DSUMF ¶ 54.)

Accordingly, Mr. Bisher's argument fails.

**F. The November 13, 2020 Email Is Not Evidence of Discriminatory or Retaliatory Animus.**

Mr. Bisher argues that an email exchange between Mr. Funk and Ms. Drew dated November 13, 2020 somehow evidences discriminatory or retaliatory animus. (ECF 28-4, pp. 6-7.) Mr. Funk testified that he felt bad about terminating Mr. Bisher's employment, but believed it was necessary because Mr. Bisher failed to change his behavior by continuing to violate Amtrak's National Attendance Policy, despite several warnings. (Funk Dep. 57:9-59:23, Ex. 1.) In the November 13, 2020 email, Mr. Funk and Ms.

Drew simply expressed that they hoped the Hearing Officer would not let Mr. Bisher "off the hook." (ECF 28-3, p. 14.) Mr. Funk's and Ms. Drew's opinions that it was necessary for Amtrak to terminate Mr. Bisher's employment after he habitually violated Amtrak's National Attendance Policy, despite being given several chances to correct his behavior, is not evidence of discrimination or retaliation. *See, e.g., Keen v. D.P.T. Bus. Sch.*, No. 00-3758, 2002 WL 24434, at *10 (E.D. Pa. Jan. 9, 2002) ("The fact that Plaintiff's immediate supervisor would not recommend Plaintiff for a promotion because of her negative attitude does not translate into an act of age discrimination, nor does it corroborate Plaintiff's theory of pretext.").

## II. MR. BISHER'S ASSERTION THAT AMTRAK'S WITNESSES ARE NOT CREDIBLE CANNOT DEFEAT AMTRAK'S MOTION FOR SUMMARY JUDGMENT.

Mr. Bisher argues that summary judgment should not be granted because "Drew and Funk have credibility issues," "Jerew, Buck, Funk and Drew, all career management employees for Amtrak, are not credible," "Funk is not credible," "Funk's Declaration . . . is not credible," and "Richtarich's determination is not credible[.]" (ECF 28-4, p. 13; ECF 28, pp. 16, 19-20.) Mr. Bisher, however, cannot defeat summary judgment by merely attacking the credibility of a witness. Rather, Mr. Bisher must set forth affirmative evidence to dispute Amtrak's articulated reasons for terminating his employment. *See S.E.C. v. Antar*, 44 F. App'x 548, 554 (3d Cir. 2002) (quoting *Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 130 (3d Cir. 1998) (quotations omitted)) ("[C]oncerns regarding the credibility of witnesses cannot defeat summary judgment. Instead, the nonmoving party must present affirmative evidence in order to defeat a properly supported motion for summary judgment."). He has not done so.

In *Schoonejongen*, the Third Circuit held that "if a moving party has demonstrated the absence of a genuine issue of material fact – meaning that no reasonable jury could find in the non-moving party's favor based on the record as a whole – concerns regarding the credibility of witnesses cannot defeat summary judgment." 143 F.3d at 130 (citations omitted). "Thus, summary judgment is particularly appropriate where, notwithstanding issues of credibility, the nonmoving party has presented no evidence

or inferences that would allow a reasonable mind to rule in its favor." *Id.* In viewing the evidence, the Third Circuit held that "[a]gainst all [the] affidavits, deposition testimony, and undisputed facts, the plaintiffs, who would bear the burden of proof on this issue at trial, have not set forth even the slightest quantum of evidence or reasonable factual inference to support" their claims, and thus summary judgment was appropriate. *Id.*

Here, like in *Schoonejongen*, Mr. Bisher has failed to set forth any evidence or reasonable factual inference to support his claims that Amtrak discriminated against him because of his disability or age, retaliated against him for requesting FMLA leave, or interfered with his FMLA rights. The record demonstrates that Amtrak terminated Mr. Bisher's employment because he (1) violated Amtrak's National Attendance Policy by accruing three occurrences in September 2020, (2) was already on a final warning, and (3) had received both a verbal and written warning for attendance violations in August and September 2020, yet failed to change his behavior. (DSUMF ¶¶ 97, 102.) Further, the record shows that Amtrak granted each of Mr. Bisher's requests for FMLA leave during his employment and followed its practice when determining a start date for Mr. Bisher's leave. (DSUMF ¶¶ 34-59, 107-117, 145.) As such, the record, as a whole, establishes that there is no genuine issue of material fact in this case. Accordingly, Mr. Bisher cannot defeat summary judgment simply by arguing that Amtrak's witnesses are not credible.

## III. MR. BISHER'S HEARSAY EVIDENCE MUST BE STRICKEN AND CANNOT DEFEAT SUMMARY JUDGMENT.

In his Opposition, Mr. Bisher relies on an email from a customer who claims to have heard Mr. Funk tell Mr. Bisher "I'll get you." (ECF 28, Ex. 18.) This email is inadmissible hearsay, as it is an out-of-court statement offered by Mr. Bisher to prove the truth of the matter asserted therein (specifically, that Mr. Funk made a comment to Mr. Bisher and that Mr. Funk was out to "get" him). Fed. R. Evi. 801, 802, 805. "Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment." *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009). Because the customer email referencing Mr. Funk's alleged comment to Mr. Bisher is inadmissible hearsay, it must be stricken

and cannot be considered as evidence when considering Amtrak's motion. Even if this email were admissible, it does not evidence age or disability discrimination, nor does it show any hostility towards Mr. Bisher on the basis of age or disability.[6]

## IV. CONCLUSION

For the reasons set forth herein and in Amtrak's opening brief, Amtrak respectfully requests that this Court grant its Motion for Summary Judgment and dismiss Plaintiff's Complaint in its entirety with prejudice.

Respectfully submitted,

*/s/ Nina K. Markey*

Nina K. Markey (PA # 201801)
Kimberly Saginario (PA #325271)
**LITTLER MENDELSON, P.C.**
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102.1321
Telephone: 267.402.3000
Facsimile: 267.402.3131
nmarkey@littler.com
ksaginario@littler.com

*Attorneys for Defendant*

Dated: November 20, 2023

[6] Mr. Bisher further claims that the sworn declarations of Ms. Warner, Ms. Drew, Mr. Funk, and Mr. Buck are hearsay. (ECF 28, pp. 4, 13.) This Court, however, has made clear "that a party's statements may be evidence for the purposes of a motion for summary judgment if they are sworn statements such as declarations or affidavits[.]" *Pellegrino v. U.S. Transp. Sec. Admin.*, No. CIV.A. 09-5505, 2014 WL 3952936, at *2 (E.D. Pa. Aug. 12, 2014). Thus, his argument fails.

**CERTIFICATE OF SERVICE**

I, Nina K. Markey, hereby certify that on the 20th day of November, 2023, the foregoing document was filed using the Eastern District of Pennsylvania's ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon all counsel of record.

*/s/ Nina K. Markey*
Nina K. Markey